UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
*****************************
WILLIAM STEFANIAK and         *          CIVIL ACTION NO. 05-11465-MLW
JANICE STEFANIAK,             *
        Plaintiffs            *
                              *
v.                            *
                              *
VOYAGER III, LLC,             *
WATER TRANSPORTATION          *
ALTERNATIVES, INC.,           *
        Defendants.           *
*****************************
```

## MOTION TO COMPEL DEFENDANTS' RESPONSE TO
## PLAINTIFFS' DISCOVERY REQUESTS

The Plaintiffs move this honorable court, pursuant to Rule 37(a) of the Federal Rules of Civil

Procedure, to compel the Defendants to answer all of the interrogatories propounded by the Plaintiffs

and to produce all the documents requested by the Plaintiffs within ten days of the allowance of this

Motion.  Pursuant to Fed.R.Civ.P. 37(a)(2)(A) and LR 37.1, the Plaintiffs have attempted to confer

with Counsel for the Defendants.  *See* Plaintiffs' Certification, *infra*.

As grounds therefore, the Plaintiff states as follows:

1. On February 27, 2006, the Plaintiff served the Defendants with Interrogatories and

   Requests for Production of Documents.  *See* Copies of all such written discovery

   attached as Exhibit A.

2. Defendants' Answers to Interrogatories were due on April 14, 2006 and Defendants'

   Responses to the Document Requests were due on March 30, 2006.

3. On April 13, 2006 Plaintiffs granted the Defendants a thirty-day extension, up to and

   inclusive of May 13, 2006, by which they were to serve their responses.  *See* Defendants'

confirmation of said extension attached as Exhibit B.

4.  On March 13, 2006, despite such thirty-day extension, the Defendants failed to respond to Plaintiffs' Interrogatories and Request for Production of Documents.

5.  In addition to the extension granted by Plaintiffs, Plaintiffs' Counsel discussed the overdue responses with Defense Counsel on several occasions seeking responses.

6.  At the May 24, 2006 scheduling conference before this court, Plaintiffs agreed to dismiss two of the four Defendants originally named.  Counsel for the Defendants informed Counsel for the Plaintiff that a letter confirming the arrangement by which such Defendants were released would be forthcoming.  To date, nothing has been received in this regard.

7.  To date, the Defendants have failed to answer the interrogatories or produce any of the requested documents.  Pursuant to the "usual rule . . . failing to serve objections to requests for documents within the time period prescribed by Rule 34(b), Fed.R.Civ.P., operates as a waiver of the objections to production."  *See* Day v. Boston Edison Co., 150 F.R.D. 16, 21 (D.Mass. 1993) *citing to* Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D.Mass. 1988) *see also* Baicker-McKee, *Federal Civil Rules Handbook*, Author's Commentary on Rule 34, 710 (West 2006) ("All grounds for objection must be specifically stated in a timely response or they are waived . . .").

WHEREFORE, Plaintiffs respectfully request that this honorable court allow their Motion and, within ten days of this court's Order to do so, Compel the Defendants to:

1.   Answer all of the interrogatories propounded by the Plaintiffs;

2.   Produce all the documents requested by the Plaintiffs;

3.   Produce the memorialization of the Agreement by which Plaintiffs agreed to dismiss two of the four Defendants; and

4.   Reimburse Plaintiffs for the fair and reasonable costs of bringing this motion.

IN ADDITION, Plaintiffs request, pursuant to the authorities cited *supra* that all objections be Ordered WAIVED for failure to timely respond.

## LOCAL RULE 37.1 CERTIFICATE OF COMPLIANCE

I, David B. Kaplan, counsel for the Plaintiffs in the above entitled matter, state that counsel have conferred with regard to the subject matter of this Motion, in compliance with Fed.R.Civ.P. 37(a)(2)(A) and LR 37.1 in a good faith attempt to resolve or narrow the issues presented herein.

Respectfully submitted,
WILLIAM STEFANIAK and
JANICE STEFANIAK
By their attorney,

/s/ David B. Kaplan
DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080
B.B.O. No. 258540

Dated: June 12, 2006

# Exhibit A

# THE KAPLAN / BOND GROUP

David B. Kaplan
Thomas M. Bond
Tracey N. Kaplan
Brian Keane

*Attorneys at Law and Proctors in Admiralty*
*88 Black Falcon Avenue, Suite 301*
*Boston, Massachusetts 02210*

*(617) 261-0080*
*Fax (617) 261-1558*

February 27, 2006

Kenneth Chiarello, Esq.
Clinton & Muzyka P.C.
One Washington Mall
Boston, MA 02108

RE:    Stefaniak, et. al. v. Voyager III, LLC, et. al.
       USDC for the Eastern District of Massachusetts, Case No. 05-11465

Dear Attorney Chiarello:

Enclosed please find the following documentation:

1. Plaintiff, William Stefaniak's, Interrogatories Addressed to the Following Defendants:
   - VOYAGER III, LLC
   - WATER TRANSPORTATION ALTERNATIVES, INC.
   - NEW ENGLAND AQUARIUM CORPORATION
   - NEW ENGLAND AQUARIUM MARINE LIFE CENTER, INC.

2. Plaintiff, William Stefaniak's, Request for Production of Documents Addressed to the Following Defendants:
   - VOYAGER III, LLC
   - WATER TRANSPORTATION ALTERNATIVES, INC.
   - NEW ENGLAND AQUARIUM CORPORATION
   - NEW ENGLAND AQUARIUM MARINE LIFE CENTER, INC.

Very truly yours,

John J. Bromley
Law Clerk for
ATTORNEY DAVID B. KAPLAN

Encls.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
***************************
WILLIAM STEFANIAK and          *          CIVIL ACTION NO. 05-11465-MLW
JANICE STEFANIAK,              *
        Plaintiffs             *
                               *
v.                             *
                               *
VOYAGER III, LLC,              *
WATER TRANSPORTATION           *
ALTERNATIVES, INC.,            *
NEW ENGLAND AQUARIUM           *
CORPORATION, and               *
NEW ENGLAND AQUARIUM           *
MARINE LIFE CENTER, INC.,      *
        Defendants.            *
***************************
```

## PLAINTIFF, WILLIAM STEFANIAK'S, INTERROGATORIES ADDRESSED TO DEFENDANT, WATER TRANSPORTATION ALTERNATIVES, INC.

### Definitions

For purposes of these interrogatories, the following terms will be defined (pursuant to LR 26.5) as follows:

"Identify" (with respect to documents) includes the identification of all tangible documents (i.e. paper documents, recorded imagery, etc.) and all electronic documents (i.e. emails, text messages, etc.) and means to give, to the extent known, the:
   a) type and location of document;
   b) general subject matter;
   c) date of the document; and
   d) author(s) addressee(es), and recipient(s).

"Identify" (with respect to persons) means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.

"Incident" shall refer to the incident aboard the M/V VOYAGER III on July 14, 2004 whereby the plaintiff William Stefaniak was injured.

"Defendant" shall mean WATER TRANSPORTATION ALTERNATIVES, INC.

## INTERROGATORIES

1.  Please identify yourself fully, stating your name, residence, business address and relationship to the above-named defendant including your job title and number of years employed by them.

2.  Please state whether, at the time of the incident, the defendant owned, operated, controlled and/or chartered the M/V VOYAGER III.

3.  Please identify all "documents" referring to, describing, evidencing, or constituting provisions of any and all contracts, leases and charter agreements by and between this defendant and either VOYAGER III, LLC. or NEW ENGLAND AQUARIUM CORPORATION or NEW ENGLAND AQUARIUM MARINE LIFE CENTER, INC. or any other persons or entities that were contractually involved with the M/V VOYAGER III at the time of the incident by setting forth:
    a.  the type of document;
    b.  the general subject matter of the document;
    c.  the date of the document;
    d.  the author of the document, and his relationship to this defendant; and
    e.  the name, address, and relationship to this defendant of the person who presently has custody of the document.

4.  Please identify each expert whom you anticipate calling as a witness at the trial of this action by setting forth:
    a.  his or her name, address, qualifications and area of expertise;
    b.  the subject matter on which he or she is expected to testify;
    c.  the substance of each and every opinion to which he or she is expected to testify and the facts upon which each is based;
    d.  the identity of each document, treatise, report, study and article consulted and/or reviewed by him or her in forming each opinion.

5.  Does the defendant allege that any other person (including the plaintiff, William Stefaniak), firm or entity caused or contributed to the cause of the incident?

    If the answer to this interrogatory is anything other than "no", please identify, pursuant to the definition above, each such person, firm or entity that you feel contributed in any way to the happening of the incident and state all facts upon which any such contention is based, together with when, where and how the defendant became aware of each such allegation.

6.  Regarding the operation of the M/V VOYAGER III on the day of the incident please describe the following:
    a.  the M/V VOYAGER III's speed (both the speed over the bottom and the speed through the water) and compass heading and course made good at the time of the incident; and

b. the settings of the M/V VOYAGER III's helm controls (e.g. wheel, throttles and gears) at the time of the incident.

7. Please identify and, in addition to the definition above, include the relationship to this defendant of each of the following as they were on the date of the incident:
   a. the person(s) and/or entity(ies) responsible for the ownership, operation, maintenance, control and charter of the M/V VOYAGER III;
   b. the captain of the M/V VOYAGER III and his or her precise location at the time of the incident and whether he or she could see the port side bow at the time of the incident;
   c. the safety director and/or the person in charge of safety aboard the M/V VOYAGER III at the time of the incident;
   d. the crew of the M/V VOYAGER III including each crewmember's job title and/or position and the precise location of each at the time of the incident specifying those present in the wheelhouse at the time of the incident;
   e. the person(s) and/or entity(ies) responsible for maintenance and safety aboard the M/V VOYAGER III; and
   f. the M/V VOYAGER III and/or WATER TRANSPORTATION ALTERNATIVES, INC.'s shoreside employees who were responsible for safety management and supervision of the M/V VOYAGER III at the time of the incident.

8. Please describe the following conditions as they were at the time of the incident:
   a. the wind speed and direction;
   b. the velocity and direction of the current at the time of the incident;
   c. the Beaufort Sea State;
   d. the precise location in either latitude and longitude or Loran;
   e. the temperature;
   f. the amount of precipitation;
   g. the visibility; and
   h. the water conditions both inside and outside of the harbor including water temperature (if known) and height (in feet) of the swells.

9. Regarding the general pilotage and safe handling of the M/V VOYAGER III please state the maximum speed at which the vessel may be operated inside the harbor as compared to outside the harbor. If the maximum speed is affected by adverse conditions, please describe any such conditions that may have an adverse effect on the ship's speed and state the maximum speed that corresponds to operation in each such condition.

10. Please describe what happened on the date of the incident in full detail and chronological order for the period of time between the passengers boarding the M/V VOYAGER III and the vessel's return to port.

   In your answer, kindly include the following:
   a. the name and position of the person who made the decision to set sail;
   b. the medical aid, care and attention given by the defendant;
   c. the medical aid, care and attention given by others ashore;
   d. all regulations and safety precautions that were complied with; and

      e.  the name of each person from whom each piece of information given in this answer was drawn specifying who provided what.

11.    Please identify all documents or oral communications which you have withheld on the grounds of work product, privilege or for other reasons, including the destruction of such documents, by setting forth, in addition to the definition above, the following:

      a.  the author's relationship to this defendant;

      b.  the name, address and relationship to this defendant of all persons who presently have custody of the documents; and

      c.  all facts and law upon which you are basing your assertion of work product or privilege.

12.    Please describe all passenger slip and fall accidents *of any kind* that occurred during any M/V VOYAGER III-related operation during the two years prior to the incident and since the incident regardless of whether the injury gave rise to a lawsuit. Please be sure to include the following in your answer:

      a.  the identify of the injured person(s);

      b.  the identity of the those witnessing such injuries; and

      c.  the identity of the those who have knowledge of such injuries.

13.    For a period of five years prior to the date of the incident, please identify each of the defendants' employees who were in charge of organizing, planning or supervising safety aboard the M/V VOYAGER III by setting forth, in addition to the definition above, the following:

      a.  a full and complete description of each identified person's duties; and

      b.  the period for which each was employed.

14.    Regarding all communications made to passengers aboard the M/V VOYAGER III on the date of the incident, please state the following:

      a.  a description of the public address system on board the M/V VOYAGER III at the time of the incident;

      b.  a detailed description of the pre-departure safety orientation given to passengers at the start of every tour;

      c.  whether during the safety orientation passengers are told not to carry cameras or other objects in their hands when they walk in the forward deck areas; and

      d.  a detailed description of safety warnings or instructions of any kind given to the passengers by the captain or crew on the day of the incident regarding the possible effects on the vessel of the acceleration from harbor speed to cruising speed.

15.    Regarding the bow areas of the M/V VOYAGER III please state the following:

      a.  the composition of the deck in the area where the incident occurred including in your answer whether the deck was painted with paint and/or non-skid and the most recent date prior to the incident when the deck had last been painted and/or had non-skid applied;

      b.  the point during a cruise, if ever, that the bow areas are made off-limits to passengers due to rough weather and the identity of the person who makes that decision;

      c.  the M/V VOYAGER III and/or WATER TRANSPORTATION
          ALTERNATIVES, INC.'s policy regarding when, and under what wind and sea
          conditions the bow area should be made off limits; and
      d.  a description of the steps taken by the crew of the M/V VOYAGER III to ensure
          that the M/V VOYAGER III's passengers would not ride on either bow during
          rough weather.

16.   Regarding organizations, professional societies, passenger vessel associations and safety
     groups that the M/V VOYAGER III, WATER TRANSPORTATION ALTERNATIVES,
     INC. and/or those that own and operate the M/V VOYAGER III might have been a
     member of on or before the date of the incident:
      a.  list all such organizations of which the M/V VOYAGER III, WATER
          TRANSPORTATION ALTERNATIVES, INC. and/or those that own and operate
          the M/V VOYAGER III were a member;
      b.  state whether the M/V VOYAGER III, WATER TRANSPORTATION
          ALTERNATIVES, INC. and/or those that own and operate the M/V VOYAGER
          III were a member of the Passenger Vessel Association (PVA);
      c.  state whether the M/V VOYAGER III and WATER TRANSPORTATION
          ALTERNATIVES, INC.'s shoreside employees and/or vessel operators and
          crewmembers have, in any form, participated in the U.S. Coast Guard's
          *Prevention Through People* program.

17.   Please state whether the defendants' agents, servants, or employees investigated the
     incident and/or inspected the area where the incident occurred.  In your answer, kindly
     include the following:
      a.  the identity of the person(s) who performed any such investigation;
      b.  the identity of the person(s) who performed any such inspection;
      c.  a detailed description of each such investigation and inspection including the results
          of each; and
      d.  the identity of any written records of all such investigations and inspections.

18.   Please state whether the M/V VOYAGER III was experiencing any steering gear or engine
     problems on the day of the incident.

19.   Please describe the steps taken by this defendant and/or the M/V VOYAGER III's owner,
     captain, officers and/or shoreside managers, if any, to conduct a Job Hazard Analysis
     and/or risk assessment for passenger safety during rough weather.

20.   Please describe the training and/or instruction, if any, received by the
     M/V VOYAGER III's captain, officers and/or crewmembers regarding passenger safety
     including but not limited to during rough weather.

21.   Please describe any post-accident policy changes or alterations made to operation and
     safety policies aboard the M/V VOYAGER III after the incident regardless of whether
     such changes were a result of the incident.

22. Regarding statements made by witnesses and/or persons having knowledge of the facts and/or circumstances concerning the incident, please identify the following:
   a. All statements or memoranda of statements that were made by the plaintiffs concerning the incident;
   b. All statements or memoranda of statements that were made by persons who witnessed the incident; and
   c. All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

23. If you claim to be a charitable organization, describe the manner in which *any* activity carried on by the M/V VOYAGER III, in its whale watching capacity, directly accomplished the charitable purposes of this defendant corporation.

Respectfully submitted,
WILLIAM STEFANIAK,
By his attorney,

_____
DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080
B.B.O. No. 258540

Date: February 27, 2006

I hereby certify that a true copy of the above document was served via first-class mail upon each attorney of record on February 27, 2006.

_____

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
| | |
|---|---|
| WILLIAM STEFANIAK and | \* |
| JANICE STEFANIAK, | \* |
| Plaintiffs | \* |
| | \* |
| v. | \* |
| | \* |
| VOYAGER III, LLC, | \* |
| WATER TRANSPORTATION | \* |
| ALTERNATIVES, INC., | \* |
| NEW ENGLAND AQUARIUM | \* |
| CORPORATION, and | \* |
| NEW ENGLAND AQUARIUM | \* |
| MARINE LIFE CENTER, INC., | \* |
| Defendants. | \* |

CIVIL ACTION NO. 05-11465-MLW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF, WILLIAM STEFANIAK'S, REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANT, WATER TRANSPORTATION ALTERNATIVES, INC.

The documents requested herein (or true copies of them) are to be produced at the law offices of **THE KAPLAN/BOND GROUP**, 88 Black Falcon Avenue, Suite 301, Boston, Massachusetts 02210 within 30 days from the date of this request.

The defendant may comply with this request by forwarding a copy of the requested documents to plaintiffs' counsel so long as such delivery is postmarked prior to the date called for in the preceding paragraph. If the documents requested are forwarded to the plaintiffs' attorney, they should be segregated and identified by the corresponding paragraph number of the request to which they respond.

If the defendant refuses to produce any of the requested documents on the grounds of privilege, work product or otherwise, the defendant must identify each such document by identifying its author, the author's address(es), the document's date, its general subject matter, the person(s) to whom copies were furnished and the exact basis for your objection. As to any claim that information contained in the requested document is confidential and/or requires redaction, the undersigned counsel is prepared to discuss a stipulation proving adequate protection of such information.

The word "statement" includes statements which are signed or unsigned, written, oral, recorded or transcribed.

1

The term "document" refers to all physically and electronically created written, printed, recorded or drafted materials however produced or reproduced, regardless of origin or location, including all electronic media in its native electronic form, which pertain in any way to the indicated subject matter including but not limited to the following: books, manuals, records, contracts, memoranda (including written memoranda of conversations, agreements, acts or activities), minutes, diaries, calendars, desk pads, pamphlets, notices, posters, signs, statements, correspondence, data cards, computer printouts, electronic files, photographs, drawings, letters, telegrams, reports, intra-office and inter-office communications, whether prepared or received by the defendant or his/her agents or representatives.

The term "incident" shall refer to the incident aboard the M/V VOYAGER III on July 14, 2004 whereby the plaintiff William Stefaniak was injured.

The term "defendant" shall mean WATER TRANSPORTATION ALTERNATIVES, INC.

Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure, the defendant is requested to produce for inspection and copying the following documents:

## REQUESTS

1.  All documentation supportive of your claim to be a charitable organization including but not limited to proofs supportive of any tax-exempt status you may have under IRC § 501(c)(3) and/or based upon M.G.L. Ch. 231, § 85K.

2.  All Coast Guard documentation related to the M/V VOYAGER III Including but not limited to the Certificate of Documentation and the Certificate of Inspection.

3.  The nautical chart used at the time of the incident.

4.  The M/V VOYAGER III's logbook for the day of the incident and the month preceding the incident.

5.  All logs – both personal and official logs – created by the M/V VOYAGER III's operator(s) that mention, record, or otherwise note the time and details of the incident.

6.  All M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. safety policy statements and/or safety credo statements.

7.  All M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. safety manuals and safety training manuals.

8. All M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. memorandums, internal reports, emails, notes, personal logs, ship's logs, letters and written documents of any kind that describe any aspect of the incident including but not limited to any mention of the weather and/or sea state conditions at the time of the incident.

9. All operation and safety policies for the M/V VOYAGER III and/or WATER TRANSPORTATION ALTERNATIVES, INC. including but not limited to those operation and safety policies addressing the following areas:
   a. Trip cancellation procedures during rough weather;
   b. Securing forward weather decks during rough weather;
   c. Boat-handling policies and procedures during rough weather;
   d. Risk assessment and/or accident reporting procedures; and
   e. Post-accident investigation and safety audit policies.

10. All documentation – including but not limited to pamphlets, books, booklets, memos, letters, newsletters, posters, signs or notices – videos, photographs or diagrams regarding the procedures that were in place to prevent accidents and injuries including but not limited to the M/V VOYAGER III and/or WATER TRANSPORTATION ALTERNATIVES, INC.'s policies on boat handling and passenger management during rough weather.

11. All documentation – including but not limited to pamphlets, books, booklets, memos, letters, newsletters, posters, signs or notices – videos, photographs or diagrams regarding any internal M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. instructions, guidelines and/or warnings on navigation hazards and boat-handling techniques for the general geographical area of the incident.

12. All minutes to each M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. management meeting and each onboard safety meeting to date that have discussed rough water operation and passenger safety.

13. All written reports, documents or records produced in conjunction with any U.S. Coast Guard safety inspection or investigation of the M/V VOYAGER III that took place within one year before and one year after the accident.

14. All M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. written information or policies that describe the title, duty, role and responsibility of each individual working aboard the M/V VOYAGER III at the time of the incident.

15. All merchant mariner's licenses and certificates for all M/V VOYAGER III officers and crewmembers aboard the M/V VOYAGER III at the time of the incident.

16. All logbooks, timesheets and/or overtime records that document the M/V VOYAGER III captain's work and rest periods for the day of the incident and for the month preceding the incident.

17. All documentation – including but not limited to pamphlets, books, booklets, memos, letters, newsletters or notices – videos, photographs or diagrams regarding M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. work hour policies, including policies and procedures for avoiding operator fatigue and overwork.

18. All written procedures in place at the time of the incident that attempted to insure that the crew of the M/V VOYAGER III was trained and/or supervised in compliance with all relevant rules and guidelines involving safe passenger vessel operation, regardless of the source of those rules and guidelines.

19. All logs, records or transcripts of verbal communication between the M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. and/or the M/V VOYAGER III's shoreside management that mention, record or otherwise note the details of the incident.

20. A complete copy of all insurance policies related to this defendant that were in effect on the date of the incident.

21. A complete copy of all contracts in effect at the time of the incident that existed between this defendant and any other entity related to the M/V VOYAGER III and/or the M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC.'s whale watch activities.

22. All statements or memoranda of statements that were made by the plaintiffs concerning the incident.

23. All statements or memoranda of statements that were made by persons who witnessed the incident.

24. All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

25. All accident reports, investigation reports, Master's reports and all reports submitted to the Coast Guard that refer to or describe the incident including but not limited to Form CG-2692 (Report of Marine Accident, Injury or Death).

26. All documentation depicting and/or describing the entire course taken by the M/V VOYAGER III on the following whale watching voyages:
    a. the voyage immediately preceding the voyage on which the incident occurred;
    b. the voyage upon which the incident occurred; and
    c. the voyage immediately following the voyage upon which the incident occurred.

27. A copy of the results of any drug screening conducted on the captain or crew as a result of the incident.

28.  All documentation that lists the master and crew employed upon the vessel on the day of the incident.

29.  For a period of three years prior to the incident and up to the present, all correspondence between the defendant and each of the following:
     a.  the Boston Harbor Master's office; and
     b.  the U.S. Coast Guard.

30.  All documentation regarding the most recent marine survey done prior to the date of the incident.

31.  Regarding business records that pertain to the voyage upon which the incident occurred please provide a copy of the ticket, a copy of all literature that was given or available to the passengers, the passenger list, all passenger releases and/or agreements and all ticket-related sales receipts.

32.  All documents referring to, describing, evidencing or constituting post-accident investigations of the incident.

33.  All blueprints, plans, chalks, drawings, diagrams, maps and visual reproductions pertaining to the M/V VOYAGER III.

34.  All correspondence between the vessel owner, its agents, servants, employees, or members of the crew and emergency responders and/or medical facilities ashore.

35.  All employee handbooks, flyers, notices and memorandums issued to the master or crew for a period of three years prior to the incident that discuss:
     a.  safety practices and procedures aboard the M/V VOYAGER III;
     b.  safety responsibilities of the master and crew;
     c.  job duties of the master and crew; and/or
     d.  passenger access aboard the M/V VOYAGER III.

36.  All advertising related to the M/V VOYAGER III and/or the whale watch activities of the M/V VOYAGER III and WATER TRANSPORTATION ALTERNATIVES, INC. including but not limited to print ads, flyers, fax blasts, electronic mailings, brochures, television ads, direct mailings and radio ads.

37.  All reports, memoranda, logs, notices, letters, diary entries, notes, journal entries and any other correspondence or document related to injuries occurring aboard the M/V VOYAGER III for a period of five years prior to the date of the incident and up to the present.

38.  All recorded imagery including but not limited to photographic reproductions, videos, slides and microfiche related to and/or depicting the plaintiff, William Stefaniak, and/or the general area of the incident.

39.   All OSHA and U.S. Coast Guard citations, violation notices, or notices of imposition of fine that the defendants have received for a period of five years prior to the date of the incident and up to the present.

40.   The report, fee schedule, list of published work, history of testimony and Curriculum Vitae of each expert whom you anticipate calling as a witness at the trial of this action.

41.   All documents produced in response to any keeper of records depositions noticed by the defendant.

42.   All employment records related to the captain and crew that were aboard the M/V VOYAGER III and all shoreside employees having anything to do with the whale watch activities aboard the M/V VOYAGER III on the date of the incident including but not limited to resumes, Curriculum Vitae, applications, drug screens, background checks and evaluations.

Respectfully submitted,
WILLIAM STEFANIAK,
By his attorney,

DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080
B.B.O. No. 258540


Date: February 27, 2006

I hereby certify that a true copy of the above document was served via first-class mail upon each attorney of record on February 27, 2006.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| WILLIAM STEFANIAK and | \* | CIVIL ACTION NO. 05-11465-MLW |
| JANICE STEFANIAK, | \* | |
| Plaintiffs | \* | |
| | \* | |
| v. | \* | |
| | \* | |
| VOYAGER III, LLC, | \* | |
| WATER TRANSPORTATION | \* | |
| ALTERNATIVES, INC., | \* | |
| NEW ENGLAND AQUARIUM | \* | |
| CORPORATION, and | \* | |
| NEW ENGLAND AQUARIUM | \* | |
| MARINE LIFE CENTER, INC., | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF, WILLIAM STEFANIAK'S, INTERROGATORIES ADDRESSED TO DEFENDANT, VOYAGER III, LLC

### Definitions

For purposes of these interrogatories, the following terms will be defined (pursuant to
LR 26.5) as follows:

"Identify" (with respect to documents) includes the identification of all tangible documents
(i.e. paper documents, recorded imagery, etc.) and all electronic documents (i.e. emails, text
messages, etc.) and means to give, to the extent known, the:
   a) type and location of document;
   b) general subject matter;
   c) date of the document; and
   d) author(s) addressee(es), and recipient(s).

"Identify" (with respect to persons) means to give, to the extent known, the person's full name,
present or last known address, and, when referring to a natural person, the present or last known
place of employment.

"Incident" shall refer to the incident aboard the M/V VOYAGER III on July 14, 2004 whereby
the plaintiff William Stefaniak was injured.

"Defendant" shall mean VOYAGER III, LLC.

## INTERROGATORIES

1.  Please identify yourself fully, stating your name, residence, business address and relationship to the above-named defendant including your job title and number of years employed by them.

2.  Please state whether, at the time of the incident, the defendant owned, operated, controlled and/or chartered the M/V VOYAGER III.

3.  Please identify all "documents" referring to, describing, evidencing, or constituting provisions of any and all contracts, leases and charter agreements by and between this defendant and either WATER TRANSPORTATION ALTERNATIVES, INC. or NEW ENGLAND AQUARIUM CORPORATION or NEW ENGLAND AQUARIUM MARINE LIFE CENTER, INC. or any other persons or entities that were contractually involved with the M/V VOYAGER III at the time of the incident by setting forth:
    a.  the type of document;
    b.  the general subject matter of the document;
    c.  the date of the document;
    d.  the author of the document, and his relationship to this defendant; and
    e.  the name, address, and relationship to this defendant of the person who presently has custody of the document.

4.  Please identify each expert whom you anticipate calling as a witness at the trial of this action by setting forth:
    a.  his or her name, address, qualifications and area of expertise;
    b.  the subject matter on which he or she is expected to testify;
    c.  the substance of each and every opinion to which he or she is expected to testify and the facts upon which each is based;
    d.  the identity of each document, treatise, report, study and article consulted and/or reviewed by him or her in forming each opinion.

5.  Does the defendant allege that any other person (including the plaintiff, William Stefaniak), firm or entity caused or contributed to the cause of the incident?

    If the answer to this interrogatory is anything other than "no", please identify, pursuant to the definition above, each such person, firm or entity that you feel contributed in any way to the happening of the incident and state all facts upon which any such contention is based, together with when, where and how the defendant became aware of each such allegation.

6.  Regarding the operation of the M/V VOYAGER III on the day of the incident please describe the following:
    a.  the M/V VOYAGER III's speed (both the speed over the bottom and the speed through the water) and compass heading and course made good at the time of the incident; and

2

b. the settings of the M/V VOYAGER III's helm controls (e.g. wheel, throttles and gears) at the time of the incident.

7. Please identify and, in addition to the definition above, include the relationship to this defendant of each of the following as they were on the date of the incident:
   a. the person(s) and/or entity(ies) responsible for the ownership, operation, maintenance, control and charter of the M/V VOYAGER III;
   b. the captain of the M/V VOYAGER III and his or her precise location at the time of the incident and whether he or she could see the port side bow at the time of the incident;
   c. the safety director and/or the person in charge of safety aboard the M/V VOYAGER III at the time of the incident;
   d. the crew of the M/V VOYAGER III including each crewmember's job title and/or position and the precise location of each at the time of the incident specifying those present in the wheelhouse at the time of the incident;
   e. the person(s) and/or entity(ies) responsible for maintenance and safety aboard the M/V VOYAGER III; and
   f. the M/V VOYAGER III's shoreside employees who were responsible for safety management and supervision of the M/V VOYAGER III at the time of the incident.

8. Please describe the following conditions as they were at the time of the incident:
   a. the wind speed and direction;
   b. the velocity and direction of the current at the time of the incident;
   c. the Beaufort Sea State;
   d. the precise location in either latitude and longitude or Loran;
   e. the temperature;
   f. the amount of precipitation;
   g. the visibility; and
   h. the water conditions both inside and outside of the harbor including water temperature (if known) and height (in feet) of the swells.

9. Regarding the general pilotage and safe handling of the M/V VOYAGER III please state the maximum speed at which the vessel may be operated inside the harbor as compared to outside the harbor. If the maximum speed is affected by adverse conditions, please describe any such conditions that may have an adverse effect on the ship's speed and state the maximum speed that corresponds to operation in each such condition.

10. Please describe what happened on the date of the incident in full detail and chronological order for the period of time between the passengers boarding the M/V VOYAGER III and the vessel's return to port.

    In your answer, kindly include the following:
    a. the name and position of the person who made the decision to set sail;
    b. the medical aid, care and attention given by the defendant;
    c. the medical aid, care and attention given by others ashore;
    d. all regulations and safety precautions that were complied with; and

3

    e.  the name of each person from whom each piece of information given in this answer was drawn specifying who provided what.

11.    Please identify all documents or oral communications which you have withheld on the grounds of work product, privilege or for other reasons, including the destruction of such documents, by setting forth, in addition to the definition above, the following:
    a.  the author's relationship to this defendant;
    b.  the name, address and relationship to this defendant of all persons who presently have custody of the documents; and
    c.  all facts and law upon which you are basing your assertion of work product or privilege.

12.    Please describe all passenger slip and fall accidents *of any kind* that occurred during any M/V VOYAGER III operation during the two years prior to the incident and since the incident regardless of whether the injury gave rise to a lawsuit. Please be sure to include the following in your answer:
    a.  the identify of the injured person(s);
    b.  the identity of the those witnessing such injuries; and
    c.  the identity of the those who have knowledge of such injuries.

13.    For a period of five years prior to the date of the incident, please identify each of the defendants' employees who were in charge of organizing, planning or supervising safety aboard the M/V VOYAGER III by setting forth, in addition to the definition above, the following:
    a.  a full and complete description of each identified person's duties; and
    b.  the period for which each was employed.

14.    Regarding all communications made to passengers aboard the M/V VOYAGER III on the date of the incident, please state the following:
    a.  a description of the public address system on board the M/V VOYAGER III at the time of the incident;
    b.  a detailed description of the pre-departure safety orientation given to passengers at the start of every tour;
    c.  whether during the safety orientation passengers are told not to carry cameras or other objects in their hands when they walk in the forward deck areas; and
    d.  a detailed description of safety warnings or instructions of any kind given to the passengers by the captain or crew on the day of the incident regarding the possible effects on the vessel of the acceleration from harbor speed to cruising speed.

15.    Regarding the bow areas of the M/V VOYAGER III please state the following:
    a.  the composition of the deck in the area where the incident occurred including in your answer whether the deck was painted with paint and/or non-skid and the most recent date prior to the incident when the deck had last been painted and/or had non-skid applied;
    b.  the point during a cruise, if ever, that the bow areas are made off-limits to passengers due to rough weather and the identity of the person who makes that decision;

    c. the M/V VOYAGER III's policy regarding when, and under what wind and sea conditions the bow area should be made off limits; and

    d. a description of the steps taken by the crew of the M/V VOYAGER III to ensure that the M/V VOYAGER III's passengers would not ride on either bow during rough weather.

16.   Regarding organizations, professional societies, passenger vessel associations and safety groups that the M/V VOYAGER III or those that own and operate her might have been a member of on or before the date of the incident:

    a. list all such organizations of which the M/V VOYAGER III and/or those that own and operate her were a member;

    b. state whether the M/V VOYAGER III and/or those that own and operate her were a member of the Passenger Vessel Association (PVA);

    c. state whether the M/V VOYAGER III's shoreside employees and/or vessel operators and crewmembers have, in any form, participated in the U.S. Coast Guard's *Prevention Through People* program.

17.   Please state whether the defendants' agents, servants, or employees investigated the incident and/or inspected the area where the incident occurred. In your answer, kindly include the following:

    a. the identity of the person(s) who performed any such investigation;

    b. the identity of the person(s) who performed any such inspection;

    c. a detailed description of each such investigation and inspection including the results of each; and

    d. the identity of any written records of all such investigations and inspections.

18.   Please state whether the M/V VOYAGER III was experiencing any steering gear or engine problems on the day of the incident.

19.   Please describe the steps taken by the M/V VOYAGER III's owner, captain, officers and/or shoreside managers, if any, to conduct a Job Hazard Analysis and/or risk assessment for passenger safety during rough weather.

20.   Please describe the training and/or instruction, if any, received by the M/V VOYAGER III's captain, officers and/or crewmembers regarding passenger safety including but not limited to during rough weather.

21.   Please describe any post-accident policy changes or alterations made to operation and safety policies aboard the M/V VOYAGER III after the incident regardless of whether such changes were a result of the incident.

22.   Regarding statements made by witnesses and/or persons having knowledge of the facts and/or circumstances concerning the incident, please identify the following:

    a. All statements or memoranda of statements that were made by the plaintiffs concerning the incident;

     b.  All statements or memoranda of statements that were made by persons who witnessed the incident; and

     c.  All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

23.   If you claim to be a charitable organization, describe the manner in which *any* activity carried on by the M/V VOYAGER III, in its whale watching capacity, directly accomplished the charitable purposes of this defendant corporation.

Respectfully submitted,
WILLIAM STEFANIAK,
By his attorney,

DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080
B.B.O. No. 258540

Date: February 27, 2006

I hereby certify that a true copy of the above document was served via first-class mail upon each attorney of record on February 27, 2006.

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
WILLIAM STEFANIAK and     \*
JANICE STEFANIAK,         \*
      Plaintiffs           \*
                            \*
v.                           \*
                            \*
VOYAGER III, LLC,        \*
WATER TRANSPORTATION   \*
ALTERNATIVES, INC.,      \*
NEW ENGLAND AQUARIUM    \*
CORPORATION, and        \*
NEW ENGLAND AQUARIUM    \*
MARINE LIFE CENTER, INC.,   \*
      Defendants.         \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CIVIL ACTION NO. 05-11465-MLW

### PLAINTIFF, WILLIAM STEFANIAK'S, REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANT, VOYAGER III, LLC

The documents requested herein (or true copies of them) are to be produced at the law offices of **THE KAPLAN/BOND GROUP**, 88 Black Falcon Avenue, Suite 301, Boston, Massachusetts 02210 within 30 days from the date of this request.

The defendant may comply with this request by forwarding a copy of the requested documents to plaintiffs' counsel so long as such delivery is postmarked prior to the date called for in the preceding paragraph. If the documents requested are forwarded to the plaintiffs' attorney, they should be segregated and identified by the corresponding paragraph number of the request to which they respond.

If the defendant refuses to produce any of the requested documents on the grounds of privilege, work product or otherwise, the defendant must identify each such document by identifying its author, the author's address(es), the document's date, its general subject matter, the person(s) to whom copies were furnished and the exact basis for your objection. As to any claim that information contained in the requested document is confidential and/or requires redaction, the undersigned counsel is prepared to discuss a stipulation proving adequate protection of such information.

The word "statement" includes statements which are signed or unsigned, written, oral, recorded or transcribed.

The term "document" refers to all physically and electronically created written, printed, recorded or drafted materials however produced or reproduced, regardless of origin or location, including all electronic media in its native electronic form, which pertain in any way to the indicated subject matter including but not limited to the following: books, manuals, records, contracts, memoranda (including written memoranda of conversations, agreements, acts or activities), minutes, diaries, calendars, desk pads, pamphlets, notices, posters, signs, statements, correspondence, data cards, computer printouts, electronic files, photographs, drawings, letters, telegrams, reports, intra-office and inter-office communications, whether prepared or received by the defendant or his/her agents or representatives.

The term "incident" shall refer to the incident aboard the M/V VOYAGER III on July 14, 2004 whereby the plaintiff William Stefaniak was injured.

The term "defendant" shall mean VOYAGER III, LLC.

Pursuant to the provisions of Rule 34 of the Federal Rules of Civil Procedure, the defendant is requested to produce for inspection and copying the following documents:

### REQUESTS

1.  All documentation supportive of your claim to be a charitable organization including but not limited to proofs supportive of any tax-exempt status you may have under IRC § 501(c)(3) and/or based upon M.G.L. Ch. 231, § 85K.

2.  All Coast Guard documentation related to the M/V VOYAGER III Including but not limited to the Certificate of Documentation and the Certificate of Inspection.

3.  The nautical chart used at the time of the incident.

4.  The M/V VOYAGER III's logbook for the day of the incident and the month preceding the incident.

5.  All logs – both personal and official logs – created by the M/V VOYAGER III's operator(s) that mention, record, or otherwise note the time and details of the incident.

6.  All M/V VOYAGER III safety policy statements and/or safety credo statements.

7.  All M/V VOYAGER III safety manuals and safety training manuals.

8.  All M/V VOYAGER III memorandums, internal reports, emails, notes, personal logs, ship's logs, letters and written documents of any kind that describe any aspect of the incident including but not limited to any mention of the weather and/or sea state conditions at the time of the incident.

9.  All operation and safety policies for the M/V VOYAGER III including but not limited to those operation and safety policies addressing the following areas:

    a.  Trip cancellation procedures during rough weather;
    b.  Securing forward weather decks during rough weather;
    c.  Boat-handling policies and procedures during rough weather;
    d.  Risk assessment and/or accident reporting procedures; and
    e.  Post-accident investigation and safety audit policies.

10. All written materials – including but not limited to pamphlets, books, booklets, memos, letters, newsletters, posters, signs or notices – videos, photographs or diagrams regarding the procedures that were in place to prevent accidents and injuries including but not limited to the M/V VOYAGER III's policies on boat handling and passenger management during rough weather.

11. All written materials – including but not limited to pamphlets, books, booklets, memos, letters, newsletters, posters, signs or notices – videos, photographs or diagrams regarding any internal M/V VOYAGER III instructions, guidelines and/or warnings on navigation hazards and boat-handling techniques for the general geographical area of the incident.

12. All minutes to each M/V VOYAGER III management meeting and each onboard safety meeting to date that have discussed rough water operation and passenger safety.

13. All written reports, documents or records produced in conjunction with any U.S. Coast Guard safety inspection or investigation of the M/V VOYAGER III that took place within one year before and one year after the accident.

14. All M/V VOYAGER III written information or policies that describe the title, duty, role and responsibility of each individual working aboard the M/V VOYAGER III at the time of the incident.

15. All merchant mariner's licenses and certificates for all M/V VOYAGER III officers and crewmembers aboard the M/V VOYAGER III at the time of the incident.

16. All logbooks, timesheets and/or overtime records that document the M/V VOYAGER III captain's work and rest periods for the day of the incident and for the month preceding the incident.

17. All written materials – including but not limited to pamphlets, books, booklets, memos, letters, newsletters or notices – videos, photographs or diagrams regarding M/V VOYAGER III work hour policies, including policies and procedures for avoiding operator fatigue and overwork.

18. All written procedures in place at the time of the incident that attempted to insure that the crew of the M/V VOYAGER III was trained and/or supervised in compliance with all relevant rules and guidelines involving safe passenger vessel operation, regardless of the source of those rules and guidelines.

19. All logs, records or transcripts of verbal communication between the M/V VOYAGER III and the M/V VOYAGER III's Shoreside management that mention, record or otherwise note the details of the incident.

20. A complete copy of all insurance policies related to this defendant that were in effect on the date of the incident.

21. A complete copy of all contracts in effect at the time of the incident that existed between this defendant and any other entity related to the M/V VOYAGER III and/or the M/V VOYAGER III's whale watch activities.

22. All statements or memoranda of statements that were made by the plaintiffs concerning the incident.

23. All statements or memoranda of statements that were made by persons who witnessed the incident.

24. All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

25. All accident reports, investigation reports, Master's reports and all reports submitted to the Coast Guard that refer to or describe the incident including but not limited to Form CG-2692 (Report of Marine Accident, Injury or Death).

26. All documentation depicting and/or describing the entire course taken by the M/V VOYAGER III on the following whale watching voyages:
    a. the voyage immediately preceding the voyage on which the incident occurred;
    b. the voyage upon which the incident occurred; and
    c. the voyage immediately following the voyage upon which the incident occurred.

27. A copy of the results of any drug screening conducted on the captain or crew as a result of the incident.

28. All documentation that lists the master and crew employed upon the vessel on the day of the incident.

29. For a period of three years prior to the incident and up to the present, all correspondence between the defendant and each of the following:
    a. the Boston Harbor Master's office; and
    b. the U.S. Coast Guard.

30.   All documentation regarding the most recent marine survey done prior to the date of the incident.

31.   Regarding business records that pertain to the voyage upon which the incident occurred please provide a copy of the ticket, a copy of all literature that was given or available to the passengers, the passenger list, all passenger releases and/or agreements and all ticket-related sales receipts.

32.   All documents referring to, describing, evidencing or constituting post-accident investigations of the incident.

33.   All blueprints, plans, chalks, drawings, diagrams, maps and visual reproductions pertaining to the M/V VOYAGER III.

34.   All correspondence between the vessel owner, its agents, servants, employees, or members of the crew and emergency responders and/or medical facilities ashore.

35.   All employee handbooks, flyers, notices and memorandums issued to the master or crew for a period of three years prior to the incident that discuss:
      a.   safety practices and procedures aboard the M/V VOYAGER III;
      b.   safety responsibilities of the master and crew;
      c.   job duties of the master and crew; and/or
      d.   passenger access aboard the M/V VOYAGER III.

36.   All advertising related to the M/V VOYAGER III and/or the whale watch activities of the M/V VOYAGER III including but not limited to print ads, flyers, fax blasts, electronic mailings, brochures, television ads, direct mailings and radio ads.

37.   All reports, memoranda, logs, notices, letters, diary entries, notes, journal entries and any other correspondence or document related to injuries occurring aboard the M/V VOYAGER III for a period of five years prior to the date of the incident and up to the present.

38.   All recorded imagery including but not limited to photographic reproductions, videos, slides and microfiche related to and/or depicting the plaintiff, William Stefaniak, and/or the general area of the incident.

39.   All OSHA and U.S. Coast Guard citations, violation notices, or notices of imposition of fine that the defendants have received for a period of five years prior to the date of the incident and up to the present.

40.   The report, fee schedule, list of published work, history of testimony and Curriculum Vitae of each expert whom you anticipate calling as a witness at the trial of this action.

41.    All documents produced in response to any keeper of records depositions noticed by the defendant.

42.    All employment records related to the captain and crew that were aboard the M/V VOYAGER III on the date of the incident including but not limited to resumes, Curriculum Vitae, applications, drug screens, background checks and evaluations.

Respectfully submitted,
WILLIAM STEFANIAK,
By his attorney,

_____
DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080
B.B.O. No. 258540

I hereby certify that a true copy of the above document was served via first-class mail upon each attorney of record on February 27, 2006.

_____

Date: February 27, 2006

# Exhibit B

## John Bromley

**From:** Kenneth Chiarello [kchiarello@clinmuzyka.com]
**Sent:** Thursday, April 13, 2006 4:40 PM
**To:** John Bromley
**Subject:** WILLIAM STEFANIAK

John,

    In reference to the above-matter and our recent telephone conversation, this is to confirm that the plaintiff has granted the defendant a thirty (30) day extension to respond to his Interrogatories and Requests for Production of Documents. Accordingly, we will forward our responses by or before April 28, 2006.

    Thank you for your cooperation.

Best regards,
*Kenneth M. Chiarello*
*Clinton & Muzyka, P.C.*
*One Washington Mall, Suite 1400*
*Boston, MA  02108*
*Tel: 617-723-9165*
*Fax: 617-720-3489*
*Email: kchiarello@clinmuzyka.com*

*E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying or storage of this message or any attachment is strictly prohibited and shall not compromise or waive such confidentiality, privilege or exemption from disclosure as to this communication.*