UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
******************************
WILLIAM STEFANIAK and          *          CIVIL ACTION NO. 05-11465-MLW
JANICE STEFANIAK,              *
        Plaintiffs             *
                               *
v.                             *
                               *
VOYAGER III, LLC,              *
WATER TRANSPORTATION           *
ALTERNATIVES, INC.,            *
        Defendants.            *
******************************
```

**MOTION TO COMPEL THE DEFENDANTS, VOYAGER III, LLC AND WATER TRANSPORTATION ALTERNATIVES, INC., TO RESPOND TO PLAINTIFF, WILLIAM STEFANIAK'S, DISCOVERY REQUESTS**

The Plaintiff, William Stefaniak ("Stefaniak"), moves this honorable court, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, to compel the Defendants, Voyager III, LLC ("Voyager") and Water Transportation Alternatives, Inc. ("WTA"), to answer all of the interrogatories and produce all the requested documents within ten (10) days of the allowance of this motion. Pursuant to Fed.R.Civ.P. 37(a)(2)(A) and LR 37.1, Stefaniak has repeatedly conferred with counsel for Voyager and WTA. *See* Plaintiff's Certification, *infra*.

This dispute arises out of Defendants' failure to adequately respond and/or respond at all to Stefaniak's properly served written discovery requests. In the spirit of cooperation, Stefaniak granted the defense an extension that was allowed to expire. Stefaniak was then forced to file a motion to compel and made it clear therein that all objections had been waived. Based upon Defendants' representations that they would serve proper responses, Stefaniak, again in the spirit of cooperation, withdrew his motion. Later, Defendants served undated and unsigned responses containing multiple objections, inappropriate privileges, evasive answers and outright refusals.

After several attempts to solve the dispute, Defendants submitted a supplementation that failed to correct their prior submissions and, in a letter, stated their "unwillingness" to supplement five specific interrogatories that the parties had discussed at length. Stefaniak, anxious to schedule and conclude the Defendants' depositions, now seeks the court's assistance in obtaining the remainder of the discovery responses owed to him and hereby conveys his concern regarding the court-ordered discovery deadline (March 31, 2007) and his plea that this deadline not be extended unless absolutely necessary.

BRIEF BACKGROUND:

1. The Discovery Deadline in this matter is March 31, 2007. *See* Scheduling Order, Document 13.

2. The parties agreed to serve all written discovery requests by September 15, 2006 and to conclude all fact witness depositions by December 29, 2006. *See* Proposed Joint Scheduling Order, Document 11.

3. Stefaniak served Defendants with Interrogatories and Requests for Production of Documents on February 27, 2006. *See* Copies of all such written discovery attached as Exhibit A to Stefaniak's June 12, 2006 Motion to Compel. *See* Document 14.

4. Pursuant to Fed.R.Civ.P. 33 and 34, Defendants' responses were due on April 14, 2006 and March 30, 2006 respectively.

5. On April 13, 2006 Stefaniak granted the Defendants a 30-day extension. *See* Defendants' confirmation of said extension attached as Exhibit B to Stefaniak's June 12, 2006 Motion to Compel. *See* Document 14.

6. Defendants failed to respond by the extended deadline.

7. Stefaniak discussed the overdue responses with Defendants on several occasions subsequent to the missed deadline.

8. At the May 24, 2006 scheduling conference before this court, Stefaniak agreed to dismiss two of the four Defendants originally named.  In return, Defense counsel agreed to memorialize the arrangement by which such Defendants were released.  To date, nothing has been received in this regard.

9. On June 12, 2006, Stefaniak filed a Rue 37(a) Motion to Compel Defendants' overdue responses.  *See* Document 14, incorporated herein by reference.  The filing of Stefaniak's motion compelled further discussions and, in a letter dated June 22, 2006, Stefaniak again requested compliance and reminded Defendants that, as argued in Stefaniak's motion, all objections had been waived.  *See* Plaintiffs' Letter dated June 22, Exhibit 1.  Further, Stefaniak memorialized the parties' conversation wherein Stefaniak stated his willingness to withdraw their motion if Defendants served adequate responses "before the court rules on our motion."  *See* Id.

10. On Friday June 23, 2006, Defendants served an unsigned draft of their answers to Stefaniak's Interrogatories and promised to deliver the requested documents on Monday June 26, 2006.

11. On June 26, 2006, the day that Defendants' Opposition was due, Stefaniak, without the opportunity to review Defendants' "draft" answers to interrogatories, without receiving *any* of the requested documentation, and in reliance upon Defendants' representations that Stefaniak's requests would be complied with, withdrew their Motion to Compel. Later that day, Defendants served their document production by mail.

12. Upon review of Defendants' responses, Stefaniak found that they were, in fact, inadequate and incomplete. After several conversations Stefaniak was able to convince Defendants to supplement their responses and, on September 14, 2006, supplemental answers to Stefaniak's interrogatories were hand delivered. *See* Defendants' Letter dated September 14, 2006, Exhibit 2. Though Defendants' supplementation was supposed to resolve what has become an extended discovery dispute, it in fact only served to "fan the flames." In their letter, Defendants state that they are "unwilling to supplement [their] answers to Interrogatory Nos. 6(a), 8(h), 9, 12 and 15(b-d)." *See* Id.

13. Unfortunately, subsequent conversations between the parties have been unsuccessful in resolving this matter.

14. To date, the Defendants have failed to properly respond to Stefaniak's discovery requests. *See* Statement of Disputed Requests *supra*.

STATEMENT OF DISPUTED REQUESTS

Pursuant to the "usual rule . . . failing to serve objections to requests for documents within the time period[s] prescribed by Rule[s 33(b) and] 34(b), Fed.R.Civ.P. operates as a waiver of the objections to production." *See* Day v. Boston Edison Co., 150 F.R.D. 16, 21 (D.Mass. 1993) *citing to* Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D.Mass. 1988) *see also* Baicker-McKee, *Federal Civil Rules Handbook*, Author's Commentary on Rule 34, 710 (West 2006) ("All grounds for objection must be specifically stated in a timely response or they are waived . . ."). The same applies to Interrogatories. In fact, the 1993 Advisory Committee's Note related to Rule 33(b) states that "Paragraph (4) [was] added to make clear that objection must be specifically justified, and that **unstated** or **untimely grounds** for objection ordinarily are waived." *See* 7 Moore's, *Committee*

*Note of 1993 to Amendment* § 33App.05[2], 33App.-13 (3rd ed. 2005) (emphasis added). Therefore, pursuant to the "usual rule" and based upon Defendants' behavior *supra*, Stefaniak requests that this court strike ALL of Defendants' objections with regard to each of their responses to Stefaniak's written discovery requests for both untimeliness and unstated grounds. Stefaniak incorporates this request in each of the "Disputes" set forth *infra*.

Defendants' disputed responses are discussed *infra* and attached as follows:

| DEFENDANTS' RESPONSES | EXHIBIT |
|---|---|
| Voyager's Answers to Stefaniak's Interrogatories<br>**UNDATED AND UNSIGNED; served June 26, 2006** | 3 |
| WTA's Answers to Stefaniak's Interrogatories<br>**UNDATED AND UNSIGNED; served June 26, 2006** | 4 |
| WTA's SUPPLEMENTAL Answers to Stefaniak's Interrogatories<br>**Dated September 11, 2006** | 5 |
| WTA's Responses to Stefaniak's Request for Production of Documents<br>**Dated and served June 26, 2006** | 6 |

Since the same Interrogatories were served on both Defendants, answered by the same individual, and since both are represented by the same counsel, the following applies to both:

**<u>Interrogatory No. 6</u>**
Regarding the operation of the M/V VOYAGER III on the day of the incident please describe the following:
    a.  the M/V VOYAGER III's speed (both the speed over the bottom and the speed through the water) and compass heading and course made good at the time of the incident; and
    b.  the settings of the M/V VOYAGER III's helm controls (e.g. wheel, throttles and gears) at the time of the incident.

<u>Answer</u>
    a.  Captain Dayle Sullivan-Taylor was conning the vessel at the general time of the incident. Because Captain Sullivan-Taylor did not witness the incident and the plaintiff's deposition has not been obtained, the information sought in subpart (a) cannot be provided at this time. The defendant will supplement this response when and if the exact time of the alleged injury can be established.
    b.  Captain Dayle Sullivan-Taylor was conning the vessel at the general time of the incident. Because Captain Sullivan-Taylor did not witness the incident and the plaintiff's deposition

has not been obtained, the information sought in subsection (b) cannot be provided at this time. The defendant will supplement this response when and if the exact time of the alleged injury can be established.

<u>DISPUTE</u>

Defendant failed to answer this interrogatory. It is not enough to say that the *CAPTAIN* who was "conning the vessel at the general time" and whose view of the incident was <u>unobstructed</u> (*see* image of vessel's forward half, right) must wait until they have an opportunity to speak with Stefaniak, a *non-seaman*, before they are able to ascertain what their **speed**, **direction** and **helm settings** were at the



*The M/B VOYAGER III as seen in Defendants' Brochure*

time of the incident. Assuming, *arguendo*, that the Captain was not watching where the ship was going, the signatory to the answers, William Walker, as the "responding agent . . . must provide the composite knowledge available to the party." See Fed.R.Civ.P. 33(a) *and* Baicker-McKee, <u>Federal Rules Handbook</u>, *Author's Commentary on Rule 33*, 693 (West 2006) *citing to* <u>Law v. NCAA</u>, 167 F.R.D. 464, 476 (D.Kan. 1996) (vacated on other grounds). It does not matter "whether or not that officer or agent has personal knowledge of the facts." *See* <u>Law</u>, 167 F.R.D. at 476 *citing to* [currently] 7 Moore's Federal Practice, § 33.102[2] at 33-68.1 (3d ed. 2005) *citing to* <u>General Dynamics Corp. v. Selb Mfg.</u>, 481 F.2d 1204, 1210 (8th Cir. 1973) (imposing sanctions when corporation's secretary failed to answer interrogatory due to "insufficient personal knowledge," because, as agent of corporation, he was obliged to furnish all information available to corporation).

"[T]he duty to provide all information available refers to any information imputed to the

organizational party itself, including information possessed by officers, employees, and former employees of the party, as well as the party's counsel." *See* 7 Moore's, § 33.102[2] at 33-68.1.

The approximate time of the incident is presumably known by the Captain that had to stop the vessel and rush Stefaniak back to shore and is certainly within Defendants' "composite knowledge" where the following documentation, submitted by the defense in response to Stefaniak's document requests, each of which establishes the time frame and/or "exact time" Defendants claim to lack:

- The Coast Guard Report, defense Exhibit A, places the time of the incident at approximately 10:10 a.m.  *See* Page 2 of the Coast Guard Report, Exhibit 7.

- Defendants' "Harbor Express Shift Log", defense Exhibit B, though nearly illegible in the form produced (*see* "Dispute" related to Response No. 5, *infra*) appears to state the time and/or time frame of the incident.  *See* Harbor Express Shift Log, Exhibit 8.

- Defendants' "Passenger Accident Report", defense Exhibit D, which places the time of the incident at exactly "10 am."  *See* Passenger Accident Report, Exhibit 9.

Since Defendant has all of the information necessary to answer the interrogatory, their answer and refusal to supplement epitomizes the "evasive answer" forbidden by the Federal Rules because Defendants' answer has failed to "entail[] a conscientious and good faith effort to comprehend the question and to answer it explicitly."  *See* 7 Moore's, § 33.101 at 33-67 *citing to* Herdlein Techs., Inc. v. Century Contractors, Inc., 147 F.R.D. 103, 107 (W.D.N.C. 1993) (interrogatory answer deemed evasive).  Defendant failed to supplement this answer in their September 11, 2006 Supplemental Answers and stated their refusal to do so in their September 14 Letter, Exhibit 2.

**Interrogatory No. 8(h)**
Please describe the following conditions as they were at the time of the incident:
  h.  The water conditions both inside and outside of the harbor including water temperature (if known) and height (in feet) of the swells.

Answer
  h.  The defendant does not recall the water temperature.  This, however, is a matter of public record and equally available to the plaintiff.  There was no swell in the inner harbor.  The defendant objects to the relevancy of any swell outside the harbor.

DISPUTE

Defendant has waived all objections (*see supra*) and refused to answer a proper interrogatory.  Though the 2000 Amendment to Fed.R.Civ.P. 26(b)(1) "narrowed the scope of permissible discovery"; to be **relevant** "'the fact must be germane to a claim or defense alleged.'" *See* In re PE Corp. Securities Litigation, 221 F.R.D. 20, 24 (D.Conn. 2003) *citing to* 6 Moore's § 26.41[6][c] (3d ed. 2002).  In fact, our First Circuit has held that "discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action."  *See* Gagne v. Reddy, 104 F.R.D. 454, 456 (1st Cir. 1984) *quoting* Miller v. Doctor's Gen. Hosp., 76 F.R.D. 136, 138-139 (W.D.Okla. 1977) ("relevancy is broadly construed at the discovery stage of litigation and *a request for discovery should be considered relevant if there is **any possibility** that the information sought may be relevant to the subject matter of the action.*") (emphasis added).

Where Stefaniak has consistently maintained that his injuries occurred as a result of Defendants' excessive speed at the harbor's breech – where the inner harbor's calm water transitions into the outer harbor's more turbulent water and where the Defendants use the speed of their vessel as a selling point in their advertisements, the information sought is relevant to Stefaniak's claim. *See* Brochure at 2, Exhibit 10 ("Enjoy the view as this high-speed catamaran whisks you safely . . .").

8

Defendant failed to supplement this answer in their September 11, 2006 Supplemental Answers and stated their refusal to do so in their September 14 Letter, Exhibit 2.

**Interrogatory No. 9**

Regarding the general pilotage and safe handling of the M/V VOYAGER III please state the maximum speed at which the vessel may be operated inside the harbor as compared to outside the harbor. If the maximum speed is affected by adverse conditions, please describe any such conditions that may have an adverse effect on the ship's speed and state the maximum speed that corresponds to operation in each such condition.

Answer

The defendant submits that the piloting and speed that the vessel is permitted to travel within Boston Harbor is governed in part by regulations equally accessible to the plaintiff. The piloting and speed of the vessel is also affected by the composite of the extent of the weather, the vessel's geographical location, vessel traffic, and other atmospheric conditions. No speed is fixed because these conditions are variable.

DISPUTE

Defendant failed to answer this interrogatory. Stefaniak did not ask what the maximum speed is *governed by* nor did he ask *what "composite" may "affect" such speed*. Stefaniak asked only what *the Defendant knows* regarding the maximum speed at which *its* vessel may be operated inside the harbor vs. outside the harbor and the maximum speed under any "adverse conditions" that may affect such maximum speed(s). Whether such knowledge is based upon internal corporate policies, federal regulations, or advice of the Captain is <u>irrelevant</u>. Therefore, Defendants' answer is "evasive." *See* Dispute to No. 6, *supra*. In addition, Defendant failed to supplement this answer in their September 11, 2006 Supplemental Answers and stated their refusal to do so in their September 14 Letter, Exhibit 2.

**Interrogatory No. 10**

Please describe what happened on the date of the incident in full detail and chronological order for the period of time between the passengers boarding the M/V VOYAGER III and the vessel's return to port.

In your answer, kindly include the following:
   a. the name and position of the person who made the decision to set sail;
   b. the medical aid, care and attention given by the defendant;
   c. the medical aid, care and attention given by others ashore;

    d.  all regulations and safety precautions that were complied with; and

    e.  the name of each person from whom each piece of information given in this answer was drawn specifying who provided what.

Answer

The defendant objects to Interrogatory No. 10 in that it is overly broad and vague, unduly burdensome, and seeks information not likely to lead to the discovery of admissible evidence. Without waiving its objections, the defendant submits the following:

    a.  Captain David McDevitt

    b.  The plaintiff was made comfortable and attended to while the vessel deviated to a closer port for transfer to an ambulance. He did not receive any "medical care" while onboard the vessel.

    c.  The defendant is not aware of the nature, extent, and scope of medical treatment that the plaintiff received ashore.

    d.  The defendant objects to subpart (d) in that it fails to identify any regulation and/or precaution and is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. To the extent that the plaintiff identifies the regulation and/or precaution and limits the scope of subpart (d), the defendant will respond accordingly.

    e.  The defendant objects to subpart (e) in that it seeks information obtained in anticipation of litigation and protected by the attorney work-product and attorney-client privileges.

Supplemental Answer

    e.  Without waiving its objection, the defendant does not recall each and every crewmember's involvement with the plaintiff during the time the vessel deviated to a closer port for transfer to an ambulance.

DISPUTE

        Defendant has waived all objections (*see supra*) and has failed to answer this interrogatory.

Defendants' answer is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party." *See* Id. As stated in the Interrogatory, Stefaniak had simply asked Defendant to "describe" what happened.

**Interrogatory No. 12**

Please describe all passenger slip and fall accidents of any kind that occurred during any M/V VOYAGER III-related operation during the two years prior to the incident and since the incident regardless of whether the injury gave rise to a lawsuit. Please be sure to include the following in your answer:

    a.  the identify of the injured person(s);

    b.  the identity of the those witnessing such injuries; and

    c.  the identity of the those who have knowledge of such injuries.

Answer
The defendant objects to Interrogatory 12 in that it seeks information not likely to lead to the discovery of admissible evidence. To the extent that the plaintiff limits the scope of Interrogatory No. 12 to incidents that occurred in the same area onboard the vessel, during similar weather conditions, and under similar navigating conditions as alleged in this claim by the plaintiff, the defendant will respond accordingly, otherwise it relies on its objection.

Supplemental Answer
Without waiving its objection, the defendant submits it did not start to operate the vessel until the beginning of the 2003 whale watching season. The defendant is not aware of any personal injuries that occurred on the vessel's forepeak or pulpits from the time it started to operate the vessel until the date of the incident.

DISPUTE

Defendant has waived all objections (*see supra*) and has failed to answer this interrogatory.

Defendants' answer is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party." *See* <u>Id</u>. Stefaniak is entitled to the discovery of prior incidents that are *similar* to his accident – i.e. "slip and fall"-type accidents where the injury occurred as a result of the vessel and/or water/weather conditions which worked either independently or together to throw the injured party off their feet. *See* 6 Moore's § 26.41[6][c] at 26-119 *citing to* <u>Baine v. General Motors Corp.</u>, 141 F.R.D. 328, 329-330 (M.D.Ala. 1991) *and* <u>Hayden v. Bracy</u>, 744 F.2d 1338, 1342 (8th Cir. 1984). In addition, any such prior incidents are "relevant" to Stefaniak's claims. *See* "relevance" as argued in Dispute to No. 8, *supra*. Based on the Rules of Civil Procedure as applied by the current law, cited *supra*, the Defendant should not be permitted to narrow the scope of "similar" to the point that it becomes "exact."

According to the U.S. Coast Guard's website, there have been at least two other "reported" incidents in which injuries were sustained aboard the Defendants' vessel. *See* USCG Port State Information Exchange ("PSIX") Report found at <u>http://cgmix.uscg.mil/PSIX/VesselResults.aspx?VesselID=489830</u> (accessed November 13, 2006), Exhibit 11. One on October 30, 2001 and another on March 6, 2005 which, upon information and belief, involved a passenger's death in

St. Petersburg, FL. *See* Id. It is important to note that the PSIX report only reflects "reported" incidents. Though Stefaniak has submitted a FOIA request in an effort to obtain the incident reports related to both reported incidents stated *supra*, he maintains his right to discover ALL such similar prior incidents regardless of whether they were reported.

Given the evidence cited to *supra*, Defendant failed to properly answer and/or supplement this answer in their September 11, 2006 Supplemental Answers and stated their refusal to do so in their September 14 Letter, Exhibit 2.

**Interrogatory No. 15(d)**
Regarding the bow areas of the M/V VOYAGER III please state the following:
  d. a description of the steps taken by the crew of the M/V VOYAGER III to ensure that the M/V VOYAGER III's passengers would not ride on either bow during rough weather.

Answer
  d. The vessel's pulpits are closed to passengers during transit. *See, (b) above.* [(b) The vessel's pulpits are closed to passengers during transit. The Captain will determine whether to open those areas to the passengers upon the observation of whales.]

DISPUTE
Defendant has waived all objections (*see supra*) and has failed to answer this interrogatory.

Defendants' answer is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party." *See* Id. As stated in the Interrogatory, Stefaniak had simply asked Defendant to "state" the steps taken to ensure that passengers do not ride on either bow during rough weather; i.e. chains, signs, barriers, crew monitoring, announcements, etc.

Defendant failed to supplement this answer in their September 11, 2006 Supplemental Answers and stated their refusal to do so in their September 14 Letter, Exhibit 2.

**Interrogatory No. 19**
Please describe the steps taken by this defendant and/or the M/V VOYAGER III's owner, captain, officers and/or shoreside managers, if any, to conduct a Job Hazard Analysis and/or risk assessment for passenger safety during rough weather.

Answer

The defendant objects to the portion of Interrogatory No. 19 seeking information regarding Job Hazard Analysis as it requests information not likely to lead to the discovery of admissible evidence an is protected by the self-critical analysis privilege. The plaintiff was a passenger not an employee at the time of the incident. Additionally, the defendant submits that the Captains that served on board the vessel are U.S. Coast Guard licensed.

Supplemental Answer

During a whale watch excursion, the defendant is continuously assessing any risks to passengers by routinely inspecting the passenger areas and existing circumstances, and; by evaluating the forecasted and actual weather and sea conditions, and responding appropriately under the circumstances. The defendant reserves the right to supplement this response as discovery progresses.

DISPUTE

Notwithstanding Defendants' improper assertion of the "self-critical analysis privilege",

which is "a federal *medical* peer review privilege" (*see* Moloney v. U.S., 204 F.R.D. 16, 18

(D.Mass. 2001) (emphasis added)), Defendant has waived all objections (*see supra*) and has failed to

answer this interrogatory. Defendants' answer is "evasive" (*see* Dispute to No. 6, *supra*) and fails to

state the "composite knowledge available to the party." *See* Id. Defendant's answer that "the

Captains that served on board the vessel are U.S. Coast Guard licensed" is on-point with the answer

deemed evasive in Herdlein Techs., Inc., cited *supra*. In Herdlein Techs., Inc., the discovering party

requested the identity of all employees "who are registered Professional Engineers or Registered

Architects." See 147 F.R.D. at 107. The court deemed the responding party's supplemental answer,

which stated, "Terry Ray is a professional engineer" to be evasive for its failure to identify Terry

Ray's state of registration, his registration number, and for using the article "a" which "[left] open

the possibility that other professional engineers work presently for Herdlein or have in the past . . ."

*See* Id. In the instant matter, Defendant has provided unsought information in lieu of a "good faith

effort to comprehend the question and to answer it explicitly." *See* "evasiveness" argument in

Dispute to No. 6, *supra*.

It is *irrelevant* that Stefaniak "was a passenger not an employee." It is *entirely relevant*,

however, whether Defendant "conduct[ed] a Job Hazard Analysis" because ANY safety check performed onboard a vessel may result in safety hazard awareness and respective measures of correction – all of which are discoverable.  *See* "relevance" argument in Dispute to No. 8, *supra*.


<u>DISPUTED DOCUMENT REQUESTS</u>

**<u>Request No. 3</u>**
The nautical chart used at the time of the incident.

<u>Response</u>
To the extent that the defendant still has the chart in its possession, it will be made available to the plaintiff during the vessel's onboard inspection.

<u>DISPUTE</u>
   Though Defendants' duty to preserve evidence is not at issue here, Defendants' response that they may no longer have the chart "used at the time of the incident" puts Stefaniak and this court on notice that spoliation may be an issue in the near future.

   Pursuant to Fed.R.Civ.P. 34(b), Stefaniak's Request "specif[ied] a reasonable time, place, and manner of making the inspection and performing the related acts" by stating on page one of his Request that:

> <u>The documents requested herein (or true copies of them) are to be produced at the law offices of **THE KAPLAN/BOND GROUP**, 88 Black Falcon Avenue, Suite 301, Boston, Massachusetts 02210 within 30 days from the date of this request.</u>
>
> The defendant may comply with this request by forwarding a copy of the requested documents to plaintiffs' counsel so long as such delivery is postmarked prior to the date called for in the preceding paragraph.  If the documents requested are forwarded to the plaintiffs' attorney, they should be segregated and identified by the corresponding paragraph number of the request to which they respond.  *See* Page 1 of Stefaniak's Requests, Exhibit 12 (emphasis added).

   Defendants waived all objections (*see supra*) and failed to provide a copy.  During one of the many conversations' between counsel referenced to in Facts, *supra*, Stefaniak made it clear that a copy of the chart was required and Stefaniak offered to pay the appropriate copying fee.  It is not

uncommon for Captains and/or navigators to make notations on their chart. Stefaniak has a right to see any such notations made during the Defendants' regular course of business and all such markings that were present at the time of the incident.

**Request No. 4**
The M/V VOYAGER III's logbook for the day of the incident and the month preceding the incident.

AND

**Request No. 5**
All logs – both personal and official logs – created by the M/V VOYAGER III's operator(s) that mention, record, or otherwise note the time and details of the incident.

Response (same for both)
Please see a copy of the vessel's Deck Log for the date of the incident attached hereto as Exhibit "B."

DISPUTE
Though Defendants produced a "Harbor Express Shift Log" the log produced was for only the day of the incident. Defendant's production is entirely illegible. *See* Exhibit 8. Defendant also failed to produce the requested month's worth of log entries. It is in this regard that Stefaniak has requested, and requests now, legible copies of the "logbook for the day of the incident and the month preceding."

**Request No. 6**
All M/V VOYAGER III safety policy statements and/or safety credo statements.

Response
The defendant objects to Request No. 6 in that it is overly broad and vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.

DISPUTE
Defendant has waived all objections (*see supra*) and has failed to Respond to this request.

Defendants' response is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party." *See* Id.

Rule 34 requires only that "[e]ach item or category in [Stefaniak's request] be described with

'reasonable particularity.'" *See* 7 Moore's at § 34.11[3], 34-29 (3rd ed. 2005) *quoting* Fed.R.Civ.P.

34(b).  "Safety policy statements and/or safety credo statements" is very particular and cannot be

construed as either "broad" or "vague" where "[t]he test is whether a reasonable person would know

what documents or things are called for in the request."  *See* Id. *citing* Bruggeman ex rel.

Bruggeman v. Blagojevich, 219 F.R.D. 430, 436 (N.D.Ill. 2004) *see also* Crosfield Hastech, Inc. v.

Harris Corp., 672 F.Supp. 580, 590 (D.NH. 1987) ("request for corporate 'history' . . . is too unclear

to permit proper response").  Since Stefaniak *named* the requested documents in his request, so too

has he satisfied the Federal Rules Decision test that he "provide 'sufficient information to enable

[the party to whom the request is directed] to identify responsive documents.'" *See* Bruggeman, 219

F.R.D. at 436 (emphasis in the original) *quoting* Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408,

412 (M.D.N.C. 1992).

     The requested safety statements are entirely relevant as Stefaniak was in an area, within full

view of TWO Captains[1], the crew and several onlookers, that Defendants contend was "closed to

passengers during transit."  *See* WTA's Answers to Interrogatory Numbers 15b-d, Exhibit 4.

**Request No. 16**
All logbooks, timesheets and/or overtime records that document the M/V VOYAGER III captain's
work and rest periods for the day of the incident and for the month preceding the incident.

Response
The defendant objects to Request No. 17(sic.) in that it requests information not likely to lead to the
discovery of admissible evidence.  In his Answers to Interrogatories, the plaintiff does not allege any
theory of liability based upon fatigue factors.

DISPUTE
     Defendant has waived all objections (*see supra*) and has failed to Respond to this request.

Defendant's response is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite

knowledge available to the party."  *See* Id.  Stefaniak's action is not limited to what he alleges in his

---

[1] "Captain Dayle Sullivan Taylor, Captain David McDevitt, and Naturalist Jeffrey Dunn were in the vessel's

Answers to Interrogatories.  His claim is limited only to the "'short and plain statement of [his] claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *See* <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) *quoting* Fed.R.Civ.P. 8(a)(2). Stefaniak has a right to employ the "simplified 'notice pleading' [that] is made possible by the liberal opportunity for discovery . . . established by the Rules to disclose more precisely the basis of [his] claim and . . . to define more narrowly the disputed facts and issues."  *See* <u>Id</u>. at 47-48.  Neither Stefaniak nor this court will ever know whether fatigue was a factor unless Defendants are compelled to produce that which has been properly requested.

**Request No. 33**
All blueprints, plans, chalks, drawings, diagrams, maps and visual reproductions pertaining to the M/V VOYAGER III.

<u>Response</u>
The defendant objects to Request No. 33 in that it is overly broad and vague, and seeks documents not likely to lead to the discovery of admissible evidence.  To the extent the plaintiff limits the scope of Request No. 33 and identifies the specific drawings requested, the defendant will respond accordingly.

<u>DISPUTE</u>
        Defendant has waived all objections (*see supra*) and has failed to Respond to this request.

Defendant's response is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party."  *See* <u>Id</u>.  Notwithstanding Defendant's waiver, Stefaniak *cannot* be more specific than naming the <u>specific</u> drawings that Stefaniak seeks.  Defendant either has the requested drawings in their possession, custody or control or has easy access to the same.  Since Stefaniak's accident occurred on a specific part of the vessel, Stefaniak is willing to narrow the scope to the forward half of the weatherdeck and forward half of all higher decks.

---

wheelhouse at the general time of the incident."  *See* WTA's Answer to Interrogatory Number 7d, Exhibit 4.

**Request No. 37**

All reports, memoranda, logs, notices, letters, diary entries, notes, journal entries and any other correspondence or document related to injuries occurring aboard the M/V VOYAGER III for a period of five years prior to the date of the incident and up to the present.

Response

The defendant objects to Request No. 37 in that it is overly broad and vague, seeks documents not likely to lead to the discovery of admissible evidence, and documents obtained in anticipation of litigation and protected by the attorney work-product and attorney-client privileges.

DISPUTE

Defendant has waived all objections (*see supra*) and has failed to Respond to this request.

Defendant's response is "evasive" (*see* Dispute to No. 6, *supra*) and fails to state the "composite knowledge available to the party."  *See* Id.  As with the Dispute related to Interrogatory No. 12 *supra* (incorporated here by reference), Stefaniak is entitled to the discovery of prior incidents that are similar to his accident.  *See* Dispute to No. 12, *supra*.

LAW AND ARGUMENT

A corporate party's obligation to designating an officer or agent for purposes of answering interrogatories is not unlike the same obligation that arises under Rule 30(b)(6) to designate a proper representative for purposes of binding the corporation with their sworn testimony.  *See* Fed.R.Civ.P. 33 and 30(b)(6) respectively.  And, where, under Rule 30(b)(6), "[p]roducing an unprepared witness is tantamount to a failure to appear at a deposition[2]" so too should the Defendants' unsigned (*ergo* not sworn), incomplete and evasive answers to interrogatories be deemed a failure to answer.  *See* Fed.R.Civ.P. 37(a)(3) ("For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.") *quoted by*

---

[2] *See* CALZATURFICIO S.C.A.R.P.A. s.p.a. v. FABIANO SHOE COMPANY, INC., *201 F.R.D. 33, 39 (1st Cir. 2001) citing to* Starlight Int'l v. Herlihy, 186 F.R.D. 626, 639 (D. Kan., 1999) (*citing* United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996)); *see also* Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 303 (3 Cir., 2000) ("If the agent [of a corporation] is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.")

Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 205-206 (1999) *and* Valentin v. Concentrated Chemical Co., 184 F.R.D. 228, 229 (D.PR. 1999) ("[Rule] 37 is a case-management instrument that provides for parties to the motions requesting an order compelling discovery when opposing counsel offers merely evasive or incomplete disclosure.").

REMEDY

Rule 37(a)(4)(A) provides that "If the motion is granted or if the disclosure or requested discovery was provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees . . ." *See* Fed.R.Civ.P. 37 (a)(4)(A).  The burden is on the Defendants to prove that their "nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."  *See* Id.

As stated *supra*, Voyager and WTA "failed" (as defined by Rule 37(a)(3)) to respond to Stefaniak's discovery requests.  Also as stated *supra*, Voyager and WTA offered NO "substantial justification" other than their September 14 letter which bluntly stated their "unwillingness" to supplement their responses to Stefaniak's discovery requests.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).  Neither Voyager nor WTA have filed for a protective order.

REQUEST FOR RELIEF

WHEREFORE, Stefaniak respectfully requests that this honorable court allow his Motion and:

1.  Strike all of Defendants' objections; and within ten (10) days:

2.  Compel the Defendants to Answer all of the interrogatories propounded by Stefaniak;

3.  Compel the Defendants to Produce all the documents requested by Stefaniak;

4.  Compel the Defendants to Produce the memorialization of the Agreement by which Stefaniak agreed to dismiss two of the four Defendants; and

5.  Compel the Defendants to Reimburse Stefaniak for the fair and reasonable costs of bringing this motion which are as follows:

    a.  David B. Kaplan, Esq. → $450.00/hour X 3 hours ................................. $1,350.00
    b.  John J. Bromley, J.D. → $150.00/hour X 9.5 hours ............................... $1,425.00
                                            TOTAL  ..................................... $2,775.00

## RULE 37(a)(2)(A) AND LOCAL RULE 37.1 CERTIFICATE OF COMPLIANCE

I, David B. Kaplan, counsel for the Plaintiffs in the above entitled matter, state that counsel have conferred from May 13, 2006 to present with regard to the subject matter of this Motion, in compliance with Fed.R.Civ.P. 37(a)(2)(A) and LR 37.1 in a good faith attempt to resolve or narrow the issues presented herein.

Respectfully submitted,
WILLIAM STEFANIAK and
JANICE STEFANIAK
By their attorney,

/s/ David B. Kaplan_____
DAVID B. KAPLAN, B.B.O. No. 258540
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
(617) 261-0080

Dated: November 14, 2006

I hereby certify that a true copy of the above document was served upon each attorney of record by ECF and that a courtesy copy was served upon the court by first-class mail on November 14, 2006.

/s/ David B. Kaplan_____

# Exhibit 1

# THE KAPLAN / BOND GROUP

*90*                              *80*                              *70*

David B. Kaplan                    *Attorneys at Law and Proctors in Admiralty*                    *(617) 261-0080*
Thomas M. Bond                      *88 Black Falcon Avenue, Suite 301*                          *Fax (617) 261-1558*
Tracey N. Kaplan                       *Boston, Massachusetts 02210*
Brian Keane

June 22, 2006


**BY EMAIL AND MAIL**

Kenneth Chiarello, Esq.
Clinton & Muzyka P.C.
One Washington Mall
Boston, MA 02108

RE:     Stefaniak, et. al. v. Voyager III, LLC, et. al.
        USDC for the Eastern District of Massachusetts, Case No. 05-11465


Dear Mr. Chiarello:

We would like to cooperate with your office in every way, shape and manner possible but the law requires a full disclosure to our discovery requests. A disclosure that is now quite overdue.

As you are aware, failing to serve objections to discovery requests within the time period prescribed by the Federal Rules of Civil Procedure operates as a waiver regarding any objections that might otherwise have been raised.

Notwithstanding that you indicate that you are preparing to serve your responses and, assuming that your responses are adequate and served before the court rules on our motion, all of this shall become moot and, pursuant to our earlier conversation, our motion will be withdrawn.


Very truly yours,

DAVID B. KAPLAN

Exhibit 2

# CLINTON & MUZYKA, P.C.

### ATTORNEYS AT LAW
### ONE WASHINGTON MALL, SUITE 1400
### BOSTON, MASSACHUSETTS 02108

THOMAS E. CLINTON
THOMAS J. MUZYKA
ROBERT E. COLLINS*
KENNETH M. CHIARELLO
TERENCE G. KENNEALLY

ARTHUR P. SKARMEAS**
    Of Counsel

  *Also admitted in RI
**Also admitted in NH

September 14, 2006

*BY-HAND DELIVERY*

TELEPHONE
(617) 723-9165
FACSIMILE
(617) 720-3489
E-MAIL:
c&m@clinmuzyka.com

The Kaplan/Bond Group
88 Black Falcon Avenue
Suite 301
Boston, MA 02210

Attention:    John Bromley, Esquire

> **RE:  William Stefaniak, et al vs.**
> **VOYAGER III, LLC, et al**
> **Civil Action No. 05-11465-MLW**

Dear Mr. Bromley:

In reference to the above-matter, please find enclosed herewith Water Transportation Alternatives, Inc.'s Supplemental Answers to William Stefaniak's Interrogatories. The defendant is unwilling to supplement its answers to Interrogatory Nos. 6(a), 8(h), 9, 12, and 15(b-d). We believe that our answers appropriately respond to the information sought therein.

We are also enclosing copies of the documents received in response to the subpoenas served upon Wilson Bus Lines, Inc. and Lund Precision Products, Inc., the primary and excess insurance policies for the M/V VOYAGER III, and several HIPPA Authorizations[1] to be executed by the

---

[1] Leominster Medical Associates, Brigham & Women's Hospital (2), South Shore Hospital, Whittier Rehabilitation Hospital (2), Whidden Memorial Hospital, Health Alliance Hospital (2), Diversified Visiting Nurse Associates (2), Sterling Medical Associates, BWH Phy. Org. Department of Surgery, Frederick Makrauer, M.D., Newton-Wellesley Hospital, Massachusetts General Hospital Orthopedic Associates, Org. Department of Orthopedic Surgery, Graeme Steele, M.D., Sigal Yawetz, M.D., AMR Ambulance, and Highlands-Skilled Nursing Facility.

plaintiff and returned our office.  Based upon the fact that the M/V VOYAGER III was chartered (bareboat), managed, and operated by Water Transportation Alternatives, Inc. at the time of the incident and that there is sufficient coverage for the alleged loss, we would appreciate Voyager III, LLC being dismissed from the action and that its 30(b)(6) deposition be cancelled.

As for the 30(b)(6) deposition of Water Transportation Alternatives, Inc., which has been rescheduled for September 27, 2006 at 10:00 a.m., the defendant objects to the first issue listed on "Schedule A" as it is extremely vague and broad.  Please further define "all matters identified in plaintiff's Complaint."

Please contact the undersigned to further discuss the dismissal of Voyager III, LLC upon receipt.  Thank you for your cooperation.

Very truly yours,

Kenneth M. Chiarello

Enclosures.

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


WILLIAM STEFANIAK &                    CIVIL ACTION
JANICE STEFANIAK,                      NO: 05-11465-MLW
        Plaintiffs,

vs.


VOYAGER III, LLC., WATER
TRANSPORTATION ALTERNATIVES, INC.,
NEW ENGLAND AQUARIUM CORPORATION, and
NEW ENGLAND AQUARIUM MARINE LIFE
CENTER, INC.,
        Defendants.

## DEFENDANT, VOYAGER III, LLC'S, ANSWERS TO WILLIAM STEFANIAK'S INTERROGATORIES

Now come the defendant, Voyager III, LLC, in the
above-entitled action, by and through its undersigned
attorneys, Clinton & Muzyka, P.C., and submits herewith
its answers to William Stefaniak's Interrogatories as
follows:

## GENERAL OBJECTION

The defendant objects to all of the plaintiff's
Interrogatories insofar as they seek discovery of matters
which constitute privileged communications or materials
prepared in the anticipation of litigation or trial.  By
furnishing an answer to any Interrogatory, the defendant
does not waive any of its general or specific objections
to that or any other Interrogatory.  The defendant further

2

objects because the plaintiff's Interrogatories, including

their subparts, exceed the amount allowed under the Local

Rules for the U.S. District Court for the District of

Massachusetts and the Federal Rules of Civil Procedure.

**INTERROGATORIES**

Q.1.    Please identify yourself fully, stating your
        name, residence, business address and
        relationship to the above-named defendant
        including your job title and number of years
        employed by them.

A.1.    William L. Walker, 703 Washington Street,
        Quincy, Massachusetts.  The undersigned has been
        employed as the Manager for Voyager III, LLC for
        approximately three (3) years.  The defendant
        objects to the remaining information sought in
        Interrogatory No. 1 because it is not likely to
        lead to the discovery of admissible evidence.

Q.2.    Please state whether, at the time of the
        incident, the defendant owned, operated,
        controlled and/or chartered the M/V VOYAGER III.

A.2.    Voyager III, LLC owned the vessel and Water
        Transportation Alternatives, Inc. chartered,
        operated, and controlled the vessel at the time
        of the incident.

Q.3.    Please identify all "documents" referring to,
        describing, evidencing, or constituting
        provisions of any and all contracts, leases and
        charter agreements by and between this defendant
        and either WATER TRANSPORTATION ALTERNATIVES,
        INC. or NEW ENGLAND AQUARIUM CORPORATION or NEW
        ENGLAND AQUARIUM MARINE LIFE CENTER, INC. or any
        persons or entities that were contractually
        involved with the M/V VOYAGER III at the time of
        the incident by setting forth:

        (a)  The type of document;

        (b)  The general subject matter of the document;

3

(c)   The date of the document;

(d)   The author of the document, and his relationship to this defendant; and

(e)   The name, address, and relationship to this defendant of the person who presently has custody of the document.

A.3(a-e)   Please see the Operating Agreement attached hereto as Exhibits "A."

Q.4.   Please identify each expert whom you anticipate calling as a witness at the trial of this action by setting forth:

(a)   His or her name, address, qualifications and area of expertise;

(b)   The subject matter on which he or she is expected to testify;

(c)   The substance of each and every opinion to which he or she is expected to testify and the facts upon which each is based;

(d)   The identity of each document, treatise, report, study and article consulted and/or reviewed by him or her in forming each opinion.

A.4.   The defendant objects to Request No. 4 in that it seeks the disclosure of information that is not required to be disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. Without waiving its objection, the defendant has not made a determination concerning the experts it intends to call at trial.  Once a determination is made, the defendant will supplement this response and disclose the required information in accordance with the Federal Rules of Civil Procedure and Local Rules.

Q.5.   Does the defendant allege that any other person (including the plaintiff, William Stefaniak),

4

firm or entity caused or contributed to the
cause of the incident?
If the answer to this interrogatory is anything
other than "no", please identify, pursuant to
the definition above, each such person, firm or
entity that you feel contributed in any way to
the happening of the incident and state all
facts upon which any such contention is based,
together with when, where and how the defendant
became aware of each such allegation.

A.5.    Other than the plaintiff, the defendant at the
present time does not have any information that
any other entity caused or contributed to the
incident.  The defendant reserves the right and
will supplement this response as the plaintiff's
theories of liability are further disclosed and
the circumstances of the incident are discovered
through discovery.

Q.6.    Regarding the operation of the M/V VOYAGER III
on the day of the incident please describe the
following:

(a)    The M/V VOYAGER III's speed (both the speed
over the bottom and the speed through the
water) and compass heading and course made
good at the time of the incident; and

(b)    The settings of the M/V VOYAGER III's helm
control (e.g. wheel, throttles and gears)
at the time of the incident.

A.6(a&b)  The defendant submits that Water Transportation
Alternatives, Inc. was responsible for the
operation and management of its vessel at the
time of the incident.

Q.7.    Please identify and, in addition to the
definition above, including the relationship to
this defendant of each of the following as they
were on the date of the incident:

(a)    The person(s) and/or entity(ies)
responsible for the ownership, operation,
maintenance, control and charter of the M/V
VOYAGER III;

5

(b) The captain of the M/V VOYAGER III and his or her precise location at the time of the incident and whether he or she could see the port side bow at the time of the incident;

(c) The safety director and/or the person in charge of safety aboard the M/V VOYAGER III at the time of the incident;

(d) The crew of the M/V VOYAGER III including each crewmember's job title and/or position and the precise location of each at the time of the incident specifying those present in the wheelhouse at the time of the incident;

(e) The person(s) and/or entity(ies) responsible for maintenance and safety aboard the M/V VOYAGER III;

(f) The M/V VOYAGER III's shoreside employees who were responsible for safety management and supervision of the M/V VOYAGER III at the time of the incident.

A.7      (a) Voyager III, LLC owned the vessel and Water Transportation Alternatives, Inc. chartered, operated, maintained, and controlled the vessel at the time of the incident;

(b) The defendant submits that Water Transportation Alternatives, Inc. was responsible for the operation and management of its vessel at the time of the incident;

(c) The defendant submits that Water Transportation Alternatives, Inc. was responsible for the operation and management of its vessel at the time of the incident;

(d) The defendant submits that Water Transportation Alternatives, Inc. was responsible for the operation and

6

management of its vessel at the time of the incident;

(e)   Water Transportation Alternatives, Inc., and;

(f)   None.

Q.8.   Please describe the following conditions as they were at the time of the incident:

(a)   The wind speed and direction;

(b)   The velocity and direction of the current at the time of the incident;

(c)   The Beaufort Sea State;

(d)   The precise location in either latitude and longitude or Loran;

(e)   The temperature;

(f)   The amount of precipitation;

(g)   The visibility; and

(h)   The water conditions both inside and outside of the harbor including water temperature (if known) and height (in feet) of the swells.

A.8(a-h)   The defendant submits that Water Transportation Alternatives, Inc. was responsible for the operation and management of its vessel at the time of the incident.

Q.9.   Regarding the general pilotage and safe handling of the M/V VOYAGER III please state the maximum speed at which the vessel may be operated inside the harbor as compared to outside the harbor. If the maximum speed is affected by adverse conditions, please describe any such conditions that may have an adverse effect on the ship's speed and state the maximum speed that corresponds to operation in each such condition.

7

A.9.    The defendant submits that the piloting and
        speed that the vessel is permitted to travel
        within Boston Harbor is governed in part by
        regulations equally accessible to the plaintiff.
        The piloting and speed of the vessel is also
        affected by the composite of the extent of the
        weather, the vessel's geographical location,
        vessel traffic, and other atmospheric
        conditions.  No speed is fixed because these
        conditions are variable.

Q.10.   Please describe what happened on the date of the
        incident in full detail and chronological order
        for the period of time between the passengers
        boarding the M/V VOYAGER III and the vessel's
        return to port.  In your answer, kindly
        including the following:

        (a)    The name and position of the person who
               made the decision to set sail;

        (b)    The medical aid, care and attention given
               by the defendant;

        (c)    The medical aid, care and attention given
               by others ashore;

        (d)    All regulations and safety precautions that
               were complied with; and

        (e)    The name of each person from whom each
               piece of information given in this answer
               was drawn specifying who provided what.

A.10.   The defendant objects to Interrogatory No. 10 in
        that it is overly broad and vague, unduly
        burdensome, and seeks information not likely to
        lead to the discovery of admissible evidence.
        Without waiving its objections, the defendant
        submits the following:

        (a)    The defendant submits that Water
               Transportation Alternatives, Inc. was
               responsible for the operation and
               management of its vessel at the time of the
               incident.

8

(b)  The defendant submits that Water
     Transportation Alternatives, Inc. is
     responsible for the operation and
     management of its vessel.

(c)  The defendant is not aware of the nature,
     extent, and scope of medical treatment that
     the plaintiff received ashore.

(d)  The defendant objects to subpart (d) in
     that it fails to identify any regulation
     and/or precaution and is overly broad,
     unduly burdensome, and not likely to lead
     to the discovery of admissible evidence.
     To the extent that the plaintiff identifies
     the regulation and/or precaution and limits
     the scope of subpart (d), the defendant
     will respond accordingly.

(e)  The defendant objects to subpart (e) in
     that it seeks information obtained in
     anticipation of litigation and protected by
     the attorney work-product and attorney-
     client privileges.

Q.11.  Please identify all documents or oral
       communications which you have withheld on the
       grounds of work product, privilege or for other
       reasons, including the destruction of such
       documents, by setting forth, in addition to the
       definition above, the following:

(a)  The author's relationship to this
     defendant;

(b)  The name, address and relationship to this
     defendant of all persons who presently have
     custody of the documents; and

(c)  All facts and law upon which you are basing
     your assertion of work product or
     privilege.

A.11.  (a)  The defendant has transcribed statements
           from Jeffrey Dunn, Dayle Sullivan-Taylor,
           David McDevit and Jason Kelly, which were
           obtained by Brian Morrissey of Marine

9

> Safety Consulants, Inc.  Marine Safety
> Consultants, Inc. was engaged in
> anticipation of litigation to investigate
> the circumstances surrounding the incident.
> The defendant also has within its
> possession handwritten statements from
> Dayle Sullivan-Taylor and Jeffrey Dunn.
>
> (b)  Defense counsel and Marine Safety
>      Consultants, Inc. have copies of the
>      foregoing statements.  The defendant also
>      has copies of the handwritten statements.
>      The defendant reserves the right to
>      supplement this response.
>
> (c)  The foregoing statements were obtained and
>      prepared in anticipation of litigation and
>      are protected by the attorney work-product
>      and attorney-client privileges.

Q.12.   Please describe all passenger slip and fall
        accidents *of any kind* that occurred during any
        M/V VOYAGER III operation during the two years
        prior to the incident and since the incident
        regardless of whether the injury gave rise to a
        lawsuit.  Please be sure to include the
        following in your answer:

        (a)  The identity of the injured person(s);

        (b)  The identity of those witnessing such
             injuries, and;

        (c)  The identity of those who have knowledge of
             such injuries.

A.12(a-c)  The defendant objects to Interrogatory No. 12 in
           that it seeks information not likely to lead to
           the discovery of admissible evidence.  To the
           extent that the plaintiff limits the scope of
           Interrogatory No. 12 to incidents that occurred
           in the same area onboard the vessel during
           similar weather conditions and under similar
           navigating conditions, as alleged in this claim
           by the plaintiff, the defendant will respond
           accordingly otherwise it relies on its
           objection.

10

Q.13.    For a period of five years prior to the date of
         the incident, please identify each of the
         defendants' employees who were in charge of
         organizing, planning or supervising safety
         aboard the M/V VOYAGER III by setting forth, in
         addition to the definition above, the following:

         (a)   A full and complete description of each
               identified person's duties; and

         (b)   The period for which each was employed.

A.13(a&b) The defendant objects to Interrogatory No. 13 in
          that it is overly broad and vague, unduly
          burdensome, and seeks information not likely to
          lead to the discovery of admissible evidence.
          Without waiving its objection, the defendant
          submits that Water Transportation Alternatives,
          Inc. was responsible for the operation and
          management of its vessel at the time of the
          incident.

Q.14.    Regarding all communications made to passengers
         aboard the M/V VOYAGER III on the date of the
         incident, please state the following:

         (a)   A description of the public address system
               on board the M/V VOYAGER III at the time of
               the incident;

         (b)   A detailed description of the pre-departure
               safety orientation given to passengers at
               the start of every tour;

         (c)   Whether during the safety orientation
               passengers are told not to carry cameras or
               other objects in their hands when they walk
               in the forward deck areas; and

         (d)   a detailed description of safety warnings
               or instructions of any kind given to the
               passengers by the captain or crew on the
               day of the incident regarding the possible
               effects on the vessel of the acceleration
               from harbor speed to cruising speed.

11

A.14.    (a)    The vessel is equipped with a public
                announcement system, which is located in
                the wheelhouse, and is capable of
                addressing all spaces on the vessel.

         (b)    The defendant submits that Water
                Transportation Alternatives, Inc. was
                responsible for the operation and
                management of its vessel at the time of the
                incident.

         (c)    The defendant submits that Water
                Transportation Alternatives, Inc. was
                responsible for the operation and
                management of its vessel at the time of the
                incident.

         (d)    The defendant submits that Water
                Transportation Alternatives, Inc. was
                responsible for the operation and
                management of its vessel at the time of the
                incident.

Q.15.    Regarding the bow areas of the M/V VOYAGER III
         please state the following:

         (a)    The composition of the deck in the area
                where the incident occurred including in
                your answer whether the deck was painted
                with paint and/or non-skid and the most
                recent date prior to the incident when the
                deck had last been painted and/or had non-
                skid applied;

         (b)    The point during a cruise, if ever, that
                the bow areas are made off-limits to
                passengers due to rough weather and the
                identity of the person who makes that
                decision;

         (c)    The M/V VOYAGER III's policy regarding
                when, and under what wind and sea
                conditions the bow area should be made off
                limits; and

         (d)    A description of the steps taken by the
                crew of the M/V VOYAGER III to ensure that

12

the M/V VOYAGER III's passengers would not ride on either bow during rough weather.

A.15.    (a)    The fore deck in the area of the incident is constructed of aluminum and is coated with non-skid material, which is applied annually or as necessary;

(b)    The defendant submits that Water Transportation Alternatives, Inc. is responsible for the operation and management of its vessel at the time of the incident.

(c)    The defendant submits that Water Transportation Alternatives, Inc. is responsible for the operation and management of its vessel at the time of the incident.

(d)    The defendant submits that Water Transportation Alternatives, Inc. is responsible for the operation and management of its vessel at the time of the incident.

Q.16.    Regarding organizations, professional societies, passenger vessel association and safety groups that the M/V VOYAGER III or those that own and operate her might have been a member of on or before the date of the incident:

(a)    List all such organizations of which the M/V VOYAGER III and/or those that own and operate her were a member;

(b)    State whether the M/V VOYAGER III and/or those that own and operate her were a member of the Passenger Vessel Association (PVA);

(c)    State whether the M/V VOYAGER III's shoreside employees and/or vessel operators and crewmembers have, in any form, participated in the U.S. Coast Guard's *Prevention Through People* program.

13

A.16.    (a)  Passenger Vessel Association;

         (b)  Yes, and;

         (c)  No.

Q.17.    Please state whether the defendants' agents,
         servants, or employees investigated the incident
         and/or inspected the area where the incident
         occurred.  In your answer, kindly including the
         following:

         (a)  The identity of the person(s) who performed
              any such investigation;

         (b)  The identity of the person(s) who performed
              any such inspection;

         (c)  A detailed description of each such
              investigation and inspection including the
              results of each; and

         (d)  The identity of any written records of all
              such investigations and inspections.

A.17.    (a)  Thomas J. Muzyka and Kenneth M. Chiarello,
              Clinton and Muzyka, P.C., One Washington
              Mall, Boston, MA  02108 and Brian Morrissey,
              Marine Safety Consultants, Inc., 26 Water
              Street, Fairhaven, Massachusetts;

         (b)  Brian Morrissey, Marine Safety Consultants,
              Inc., 26 Water Street, Fairhaven,
              Massachusetts;

         (c)  The defendant objects to subpart (c) in that
              it seeks information protected by the
              attorney work-product and attorney-client
              privileges, and information obtained in
              anticipation of litigation.

         (d)  The defendant objects to subpart (d) in that
              it seeks information protected by the
              attorney work-product and attorney-client
              privileges, and information obtained in
              anticipation of litigation.

14

Q.18.    Please state whether the M/V VOYAGER III was
         experiencing any steering gear or engine
         problems on the day of the incident.

A.18.    The defendant submits that Water Transportation
         Alternatives, Inc. was responsible for the
         operation and management of its vessel at the
         time of the incident.

Q.19.    Please describe the steps taken by the M/V
         VOYAGER III's owner, captain, officers and/or
         shoreside managers, if any, to conduct a Job
         Hazard Analysis and/or risk assessment for
         passenger safety during rough weather.

A.19.    The defendant objects to the portion of
         Interrogatory No. 19 seeking information
         regarding Job Hazard Analysis as it requests
         information not likely to lead to the discovery
         of admissible evidence and is protected by the
         self-critical analysis privilege.  The plaintiff
         was a passenger not an employee at the time of
         the incident.  In respect to the remaining
         information sought therein, the defendant
         submits that Water Transportation Alternatives,
         Inc. was responsible for the operation and
         management of its vessel at the time of the
         incident.

Q.20.    Please describe the training and/or instruction,
         if any, received by the M/V VOYAGER III's
         captain, officers and/or crewmembers regarding
         passenger safety including but not limited to
         during rough weather.

A.20.    The defendant objects to Interrogatory No. 20 in
         that it is overly broad and vague.  Without
         waiving its objection, the defendant states that
         Water Transportation Alternatives, Inc. was
         responsible for the operation and management of
         its vessel at the time of the incident.

Q.21.    Please describe any post-accident policy changes
         or alterations made to operation and safety
         policies aboard the M/V VOYAGER III after the
         incident regardless of whether such changes were
         a result of the incident.

15

A.21.    There were no changes to policy.

Q.22.    Regarding statements made by witnesses and/or
         persons having knowledge of the facts and/or
         circumstances concerning the incident, please
         identify the following:

         (a)   All statements or memoranda of statements
               that were made by the plaintiffs concerning
               the incident;

         (b)   All statements or memoranda of statements
               that were made by persons who witnessed the
               incident; and

         (c)   All statements or memoranda of statements
               that were made by persons having knowledge
               of the facts and/or circumstances
               concerning the incident.

A.22.    (a)   None;

         (b)   Jeffrey Dunn;

         (c)   Captain David McDevitt, Captain Dayle
               Sullivan-Taylor, and Jason Kelly.

Q.23.    If you claim to be a charitable organization,
         describe the manner in which *any* activity
         carried on by the M/V VOYAGER III, in its whale
         watching capacity, directly accomplished the
         charitable purposes of this defendant
         corporation.

A.23.    Not applicable.

16

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS
_____ DAY OF JUNE, 2006.**

VOYAGER III, LLC


By:  _____
     William L. Walker
Its: Principal

**OBJECTIONS BY:**


_____
Thomas J. Muzyka
BBO NO. 365540
Kenneth M. Chiarello
BBO NO. 639274
CLINTON & MUZYKA, P.C
One Washington Mall
Suite 1400
Boston, MA  02108
(617) 723-9165

# Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM STEFANIAK &                    CIVIL ACTION
JANICE STEFANIAK,                      NO: 05-11465-MLW
      Plaintiffs,

vs.


VOYAGER III, LLC., WATER
TRANSPORTATION ALTERNATIVES, INC.,
NEW ENGLAND AQUARIUM CORPORATION, and
NEW ENGLAND AQUARIUM MARINE LIFE
CENTER, INC.,
      Defendants.

### DEFENDANT, WATER TRANSPORTATION ALTERNATIVES, INC.'S, ANWERS TO WILLIAM STEFANIAK'S INTERROGATORIES

Now come the defendant, Water Transportation

Alternatives, Inc., in the above-entitled action, by and

through its undersigned attorneys, Clinton & Muzyka, P.C.,

and submits herewith its answers to William Stefaniak's

Interrogatories as follows:

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's

Interrogatories insofar as they seek discovery of matters

which constitute privileged communications or materials

prepared in the anticipation of litigation or trial.  By

furnishing an answer to any Interrogatory, the defendant

does not waive any of its general or specific objections

to that or any other Interrogatory.  The defendant further

2

objects because the plaintiff's Interrogatories, including

their subparts, exceed the amount allowed under the Local

Rules for the U.S. District Court for the District of

Massachusetts and the Federal Rules of Civil Procedure.

## INTERROGATORIES

Q.1.      Please identify yourself fully, stating your
          name, residence, business address and
          relationship to the above-named defendant
          including your job title and number of years
          employed by them.

A.1.      William L. Walker, 703 Washington Street,
          Quincy, Massachusetts.  The undersigned has been
          the President for Water Transportation
          Alternatives, Inc. for approximately three (3)
          years.  The defendant objects to the remaining
          information sought in Interrogatory No. 1
          because it is not likely to lead to the
          discovery of admissible evidence.

Q.2.      Please state whether, at the time of the
          incident, the defendant owned, operated,
          controlled and/or chartered the M/V VOYAGER III.

A.2.      Voyager III, LLC owned the vessel and Water
          Transportation Alternatives, Inc. chartered,
          operated, and controlled the vessel at the time
          of the incident.

Q.3.      Please identify all "documents" referring to,
          describing, evidencing, or constituting
          provisions of any and all contracts, leases and
          charter agreements by and between this defendant
          and either WATER TRANSPORTATION ALTERNATIVES,
          INC. or NEW ENGLAND AQUARIUM CORPORATION or NEW
          ENGLAND AQUARIUM MARINE LIFE CENTER, INC. or any
          persons or entities that were contractually
          involved with the M/V VOYAGER III at the time of
          the incident by setting forth:

          (a)  The type of document;

3

     (b)    The general subject matter of the document;

     (c)    The date of the document;

     (d)    The author of the document, and his relationship to this defendant; and

     (e)    The name, address, and relationship to this defendant of the person who presently has custody of the document.

**A.3(a-e)**    Please see the Operating Agreement attached hereto as Exhibit "A."

**Q.4.**    Please identify each expert whom you anticipate calling as a witness at the trial of this action by setting forth:

     (a)    His or her name, address, qualifications and area of expertise;

     (b)    The subject matter on which he or she is expected to testify;

     (c)    The substance of each and every opinion to which he or she is expected to testify and the facts upon which each is based;

     (d)    The identity of each document, treatise, report, study and article consulted and/or reviewed by him or her in forming each opinion.

**A.4.**    The defendant objects to Request No. 4 in that it seeks the disclosure of information that is not required to be disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. Without waiving its objection, the defendant has not made a determination concerning the experts it intends to call at trial. Once a determination is made, the defendant will supplement this response and disclose the required information in accordance with the Federal Rules of Civil Procedure and Local Rules.

**Q.5.**    Does the defendant allege that any other person (including the plaintiff, William Stefaniak),

4

firm or entity caused or contributed to the
cause of the incident?

If the answer to this interrogatory is anything
other than "no", please identify, pursuant to
the definition above, each such person, firm or
entity that you feel contributed in any way to
the happening of the incident and state all
facts upon which any such contention is based,
together with when, where and how the defendant
became aware of each such allegation.

A.5.    Other than the plaintiff, the defendant at the
present time does not have any information that
any other entity caused or contributed to the
incident.   The defendant reserves the right and
will supplement this response as the plaintiff's
theories of liability are further disclosed and
the circumstances of the incident are discovered
through discovery.

Q.6.    Regarding the operation of the M/V VOYAGER III
on the day of the incident please describe the
following:

    (a)    The M/V VOYAGER III's speed (both the speed
over the bottom and the speed through the
water) and compass heading and course made
good at the time of the incident; and

    (b)    The settings of the M/V VOYAGER III's helm
control (e.g. wheel, throttles and gears)
at the time of the incident.

A.6.    (a)    Captain Dayle Sullivan-Taylor was conning
the vessel at the general time of the
incident.  Because Captain Sullivan-Taylor
did not witness the incident and the
plaintiff's deposition has not been
obtained, the information sought in subpart
(a) cannot be provided at this time.  The
defendant will supplement this response
when and if the exact time of the alleged
injury can be established.

    (b)    Captain Dayle Sullivan-Taylor was conning
the vessel at the general time of the

5

incident. Because Captain Sullivan-Taylor
did not witness the incident and the
plaintiff's deposition has not been
obtained, the information sought in
subsection (b) cannot be provided at this
time. The defendant will supplement this
response when and if the exact time of the
alleged injury can be established.

Q.7.    Please identify and, in addition to the
definition above, including the relationship to
this defendant of each of the following as they
were on the date of the incident:

(a)    The person(s) and/or entity(ies)
responsible for the ownership, operation,
maintenance, control and charter of the M/V
VOYAGER III;

(b)    The captain of the M/V VOYAGER III and his
or her precise location at the time of the
incident and whether he or she could see
the port side bow at the time of the
incident;

(c)    The safety director and/or the person in
charge of safety aboard the M/V VOYAGER II
at the time of the incident;

(d)    The crew of the M/V VOYAGER III including
each crewmember's job title and/or position
and the precise location of each at the
time of the incident specifying those
present in the wheelhouse at the time of
the incident;

(e)    The person(s) and/or entity(ies)
responsible for maintenance and safety
aboard the M/V VOYAGER III;

(f)    The M/V VOYAGER III's shoreside employees
who were responsible for safety management
and supervision of the M/V VOYAGER III at
the time of the incident.

A.7    (a)    Voyager III, LLC owned the vessel and Water
Transportation Alternatives, Inc.

6

chartered, operated, maintained, and
controlled the vessel at that time;

(b) Captain Dayle Sullivan-Taylor was conning
the vessel from its wheelhouse at the
general time of the incident.  Captain
Sullivan-Taylor could observe the port
pulpit while conning the vessel;

(c) Captain David McDevitt was responsible for
safety onboard the vessel at the time of
the incident;

(d) Captain Dayle Sullivan Taylor, Captain
David McDevitt, and Naturalist Jeffrey Dunn
were in the vessel's wheelhouse at the
general time of the incident.  Crewmember
Jason Kelly was in the vicinity of the
vessel's food & beverage counter.  The
location of the remaining crewmembers, to
wit, Melissa Rocha, Nancy Nickerson, and
Russell Drysdale at the general time of the
incident has not been determined.  The
defendant will supplement this response as
discovery progresses;

(e) Captain David McDevitt was responsible for
safety onboard the vessel at the time of
the incident, and;

(f) William L. Walker and Michael McGurl.

Q.8.    Please describe the following conditions as they
were at the time of the incident:

(a) The wind speed and direction;

(b) The velocity and direction of the current
at the time of the incident;

(c) The Beaufort Sea State;

(d) The precise location in either latitude and
longitude or Loran;

(e) The temperature;

7

(f)   The amount of precipitation;

(g)   The visibility; and

(h)   The water conditions both inside and
outside of the harbor including water
temperature (if known) and height (in feet)
of the swells.

A.8.   Captain Dayle Sullivan-Taylor was conning the
vessel at the general time of the incident.
Because Captain Sullivan-Taylor did not witness
the incident and the plaintiff's deposition has
not been obtained, the information sought in
Interrogatory No. 8 including its subparts
cannot be provided with specificity at this
time.   Nevertheless, the defendant provides the
following information for the general time of
the incident.

(a)   Fifteen (15) to twenty (20) knot
northeasterly winds.

(b)   The defendant does not recall the velocity
and direction of the current, but states
that it is a matter of public record
equally available to the plaintiff;

(c)   Beaufort Scale 2;

(d)   Slightly seaward of Buoy No. 3;

(e)   Approximately 60 degrees Fahrenheit;

(f)   It was raining, the amount was not
recorded;

(g)   One (1) mile of visibility, and;

(h)   The defendant does not recall the water
temperature.   This, however, is a matter of
public record and equally available to the
plaintiff.   There was no swell in the inner
harbor.   The defendant objects to the
relevancy or any swell outside the harbor.

8

Q.9.    Regarding the general pilotage and safe handling
        of the M/V VOYAGER III please state the maximum
        speed at which the vessel may be operated inside
        the harbor as compared to outside the harbor.
        If the maximum speed is affected by adverse
        conditions, please describe any such conditions
        that may have an adverse effect on the ship's
        speed and state the maximum speed that
        corresponds to operation in each such condition.

A.9.    The defendant submits that the piloting and the
        speed that the vessel is permitted to travel
        within Boston Harbor is governed in part by
        regulations equally accessible to the plaintiff.
        The piloting and speed of the vessel is also
        affected by the composite of the extent of the
        weather, the vessel's geographic location,
        vessel traffic, and other atmospheric
        conditions.  No speed is fixed because these
        conditions are variable.

Q.10.   Please describe what happened on the date of the
        incident in full detail and chronological order
        for the period of time between the passengers
        boarding the M/V VOYAGER III and the vessel's
        return to port.  In your answer, kindly
        including the following:

        (a)  The name and position of the person who
             made the decision to set sail;

        (b)  The medical aid, care and attention given
             by the defendant;

        (c)  The medical aid, care and attention given
             by others ashore;

        (d)  All regulations and safety precautions that
             were complied with; and

        (e)  The name of each person from whom each
             piece of information given in this answer
             was drawn specifying who provided what.

A.10.   The defendant objects to Interrogatory No. 10 in
        that it is overly broad and vague, unduly
        burdensome, and seeks information not likely to

9

lead to the discovery of admissible evidence.
Without waiving its objections, the defendant
submits the following:

(a)   Captain David McDevitt:

(b)   ne plaintiff was made comfortable and
      attended to while the vessel deviated to a
      closer port for transfer to an ambulance.
      He did not receive any "medical care" while
      onboard the vessel.

(c)   The defendant is not aware of the nature,
      extent, and scope of medical treatment that
      the plaintiff received ashore.

(d)   The defendant objects to subpart (d) in
      that it fails to identify any regulation
      and/or precaution and is overly broad,
      unduly burdensome, and not likely to lead
      to the discovery of admissible evidence.
      To the extent that the plaintiff identifies
      the regulation and/or precaution and limits
      the scope of subpart (d), the defendant
      will respond accordingly.

(e)   The defendant objects to subpart (e) in
      that it seeks information obtained in
      anticipation of litigation and protected by
      the attorney work-product and attorney-
      client privileges.

Q.11.   Please identify all documents or oral
        communications which you have withheld on the
        grounds of work product, privilege or for other
        reasons, including the destruction of such
        documents, by setting forth, in addition to the
        definition above, the following:

        (a)   The author's relationship to this
              defendant;

        (b)   The name, address and relationship to this
              defendant of all persons who presently have
              custody of the documents; and

10

    (c)   All facts and law upon which you are basing your assertion of work product or privilege.

A.11.   (a)   The defendant has transcribed statements from Jeffrey Dunn, Dayle Sullivan-Taylor, David McDevitt and Jason Kelly, which were obtained by Brian Morrissey of Marine Safety Consultants, Inc.  Marine Safety Consultants, Inc. was engaged in anticipation of litigation to investigate the circumstances surrounding the incident. The defendant also has within its possession handwritten statements from Dayle Sullivan-Taylor and Jeffrey Dunn.

    (b)   Defense counsel and Marine Safety Consultants, Inc. have copies of the foregoing statements.  The defendant also has copies of the handwritten statements. The defendant reserves the right to supplement this response.

    (c)   The foregoing statements were obtained and prepared in anticipation of litigation and are protected by the attorney work-product and attorney-client privileges.

Q.12.   Please describe all passenger slip and fall accidents *of any kind* that occurred during any M/V VOYAGER III operation during the two years prior to the incident and since the incident regardless of whether the injury gave rise to a lawsuit.  Please be sure to include the following in your answer:

    (a)   The identity of the injured person(s);

    (b)   The identity of those witnessing such injuries, and;

    (c)   The identity of those who have knowledge of such injuries.

A.12(a-c)   The defendant objects to Interrogatory No. 12 in that it seeks information not likely to lead to the discovery of admissible evidence.  To the

11

extent that the plaintiff limits the scope of
Interrogatory No. 12 to incidents that occurred
in the same area onboard the vessel, during
similar weather conditions, and under similar
navigating conditions as alleged in this claim
by the plaintiff, the defendant will respond
accordingly, otherwise it relies on its
objection.

Q.13.     For a period of five years prior to the date of
the incident, please identify each of the
defendants' employees who were in charge of
organizing, planning or supervising safety
aboard the M/V VOYAGER III by setting forth, in
addition to the definition above, the following:

(a)   A full and complete description of each
identified person's duties; and

(b)   The period for which each was employed.

A.13(a&b) The defendant objects to Interrogatory No. 13 in
that it is overly broad and vague, unduly
burdensome, and seeks information not likely to
lead to the discovery of admissible evidence.
Without waiving its objection, the defendant
submits that all of the Captains that have
served onboard the vessel were responsible for
safety.  The defendant further submits that
William Walker and Michael McGurl were
responsible for overseeing the safe operation
and management of the vessel at the time of the
incident.

Q.14.     Regarding all communications made to passengers
aboard the M/V VOYAGER III on the date of the
incident, please state the following:

(a)   A description of the public address system
on board the M/V VOYAGER III at the time of
the incident;

(b)   A detailed description of the pre-departure
safety orientation given to passengers at
the start of every tour;

12

    (c)    Whether during the safety orientation passengers are told not to carry cameras or other objects in their hands when they walk in the forward deck areas; and

    (d)    a detailed description of safety warnings or instructions of any kind given to the passengers by the captain or crew on the day of the incident regarding the possible effects on the vessel of the acceleration from harbor speed to cruising speed.

A.14.    (a)    The vessel is equipped with a public announcement system, which is located in the wheelhouse, and is capable of addressing all spaces on the vessel.

    (b)    The defendant refers the plaintiff to the Water Transportation Alternatives, Inc. Safety Announcement attached hereto as Exhibit "B."

    (c)    No, it is left to their discretion considering the prevailing conditions.

    (d)    Prior to the vessel departing on the date of the incident, Captain Dayle Sullivan-Taylor advised the passengers onboard the vessel of the possible weather and sea conditions.  The defendant reserves to supplement this response as discovery progresses.

Q.15.    Regarding the bow areas of the M/V VOYAGER III please state the following:

    (a)    The composition of the deck in the area where the incident occurred including in your answer whether the deck was painted with paint and/or non-skid and the most recent date prior to the incident when the deck had last been painted and/or had non-skid applied;

    (b)    The point during a cruise, if ever, that the bow areas are made off-limits to passengers due to rough weather and the

13

    identity of the person who makes that
    decision;

(c)   The M/V VOYAGER III's policy regarding
    when, and under what wind and sea
    conditions the bow area should be made off
    limits; and

(d)   a description of the steps taken by the
    crew of the M/V VOYAGER III to ensure that
    the M/V VOYAGER III's passengers would not
    ride on either bow during rough weather.

A.15.   (a)   The fore deck in the area of the incident
    is constructed of aluminum and is coated
    with non-skid material, which is applied
    annually or as is necessary;

(b)   The vessel's pulpits are closed to
    passengers during transit.  The Captain
    will determine whether to open those areas
    to the passengers upon the observation of
    whales.

(c)   The vessel's pulpits are closed to
    passengers during transit.  *See, (b) above.*

(d)   The vessel's pulpits are closed to
    passengers during transit.  *See, (b) above.*

Q.16.   Regarding organizations, professional societies,
    passenger vessel association and safety groups
    that the M/V VOYAGER III or those that own and
    operate her might have been a member of on or
    before the date of the incident:

(a)   List all such organizations of which the
    M/V VOYAGER III and/or those that own and
    operate her were a member;

(b)   State whether the M/V VOYAGER III and/or
    those that own and operate her were a
    member of the Passenger Vessel Association
    (PVA);

(c)   State whether the M/V VOYAGER III's
    shoreside employees and/or vessel operators

14

and crewmembers have, in any form,
participated in the U.S. Coast Guard's
*Prevention Through* People program.

A.16.   (a)  Passenger Vessel Association;

　　　　(b)  Yes, and;

　　　　(c)  No.

Q.17.   Please state whether the defendants' agents,
servants, or employees investigated the incident
and/or inspected the area where the incident
occurred.  In your answer, kindly including the
following:

　　　　(a)  The identity of the person(s) who performed
any such investigation;

　　　　(b)  The identity of the person(s) who performed
any such inspection;

　　　　(c)  A detailed description of each such
investigation and inspection including the
results of each; and

　　　　(d)  The identity of any written records of all
such investigations and inspections.

A.17.   (a)  Thomas J. Muzyka and Kenneth M. Chiarello,
Clinton and Muzyka, P.C., One Washington
Mall, Boston, MA  02108 and Brian Morrissey,
Marine Safety Consultants, Inc., 26 Water
Street, Fairhaven, Massachusetts;

　　　　(b)  Brian Morrissey, Marine Safety Consultants,
Inc., 26 Water Street, Fairhaven,
Massachusetts;

　　　　(c)  The defendant objects to subpart (c) in that
it seeks information protected by the
attorney work-product and attorney-client
privileges, and information obtained in
anticipation of litigation.

　　　　(d)  The defendant objects to subpart (d) in that
it seeks information protected by the

15

attorney work-product and attorney-client privileges, and information obtained in anticipation of litigation.

Q.18.    Please state whether the M/V VOYAGER III was experiencing any steering gear or engine problems on the day of the incident.

A.18.    No.

Q.19.    Please describe the steps taken by the M/V VOYAGER III's owner, captain, officers and/or shoreside managers, if any, to conduct a Job Hazard Analysis and/or risk assessment for passenger safety during rough weather.

A.19.    The defendant objects to the portion of Interrogatory No. 19 seeking information regarding Job Hazard Analysis as it requests nformation not likely to lead to the discovery of admissible evidence and is protected by the self-critical analysis privilege. The plaintiff was a passenger not an employee at the time of the incident. Additionally, the defendant submits that the Captains that serve onboard the vessel are U.S. Coast Guard licensed.

Q.20.    Please describe the training and/or instruction, if any, received by the M/V VOYAGER III's captain, officers and/or crewmembers regarding passenger safety including but not limited to during rough weather.

A.20.    The defendant objects to Interrogatory No. 20 in that it is overly broad and vague. Without waiving its objection, the defendant states that its crewmembers receive training concerning passenger safety, which includes but is not limited to, instructing passengers during adverse weather conditions to be properly seated, use all available handrails, and to exercise reasonable care for their own safety under the circumstances.

Q.21.    Please describe any post-accident policy changes or alterations made to operation and safety policies aboard the M/V VOYAGER III after the

16

incident regardless of whether such changes were a result of the incident.

A.21.    There were no changes to policy.

Q.22.    Regarding statements made by witnesses and/or persons having knowledge of the facts and/or circumstances concerning the incident, please identify the following:

(a)    All statements or memoranda of statements that were made by the plaintiffs concerning the incident;

(b)    All statements or memoranda of statements that were made by persons who witnessed the incident; and

(c)    All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

A.22.    (a)    None;

(b)    Jeffrey Dunn;

(c)    Captain David McDevitt, Captain Dayle Sullivan-Taylor, and Jason Kelly.

Q.23.    If you claim to be a charitable organization, describe the manner in which *any* activity carried on by the M/V VOYAGER III, in its whale watching capacity, directly accomplished the charitable purposes of this defendant corporation.

A.23.    Not applicable.

17

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS
_____ DAY OF JUNE, 2006.


                               WATER TRANSPORTATION
                               ALTERNATIVES, INC.


                               _____
                               By:  William L. Walker
                               Its: Principal


OBJECTIONS BY:


_____
Thomas J. Muzyka
BBO NO. 365540
Kenneth M. Chiarello
BBO NO. 639274
CLINTON & MUZYKA, P.C
One Washington Mall
Suite 1400
Boston, MA  02108
(617) 723-9165

# Exhibit 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


WILLIAM STEFANIAK &
JANICE STEFANIAK,
　　　Plaintiffs,

vs.


VOYAGER III, LLC., WATER
TRANSPORTATION ALTERNATIVES, INC.,
NEW ENGLAND AQUARIUM CORPORATION, and
NEW ENGLAND AQUARIUM MARINE LIFE
CENTER, INC.,
　　　Defendants.

CIVIL ACTION
NO: 05-11465-MLW

## WATER TRANSPORTATION ALTERNATIVES, INC.'S SUPPLEMENTAL ANSWERS TO WILLIAM STEFANIAK'S INTERROGATORIES

Now come the defendant, Water Transportation
Alternatives, Inc., in the above-entitled action, by and
through its undersigned attorneys, Clinton & Muzyka, P.C.,
and submits herewith its Supplemental Answers to William
Stefaniak's Interrogatories as follows:

## GENERAL OBJECTION

The defendant objects to all of the plaintiff's
Interrogatories insofar as they seek discovery of matters
which constitute privileged communications or materials
prepared in the anticipation of litigation or trial. By
furnishing an answer to any Interrogatory, the defendant
does not waive any of its general or specific objections
to that or any other Interrogatory. The defendant further

2

objects because the plaintiff's Interrogatories, including

their subparts, exceed the amount allowed under the Local

Rules for the U.S. District Court for the District of

Massachusetts and the Federal Rules of Civil Procedure.

INTERROGATORY NO. 10

Please describe what happened on the date of the
incident in full detail and chronological order for
the period of time between the passengers boarding
the M/V VOYAGER III and the vessel's return to port.
In your answer, kindly including the following:

(a)  The name and position of the person who made the
     decision to set sail;

(b)  The medical aid, care and attention given by the
     defendant;

(c)  The medical aid, care and attention given by
     others ashore;

(d)  All regulations and safety precautions that were
     complied with; and

(e)  The name of each person from whom each piece of
     information given in this answer was drawn
     specifying who provided what.

RESPONSE NO. 10

The defendant objects to Interrogatory No. 10 in that
it is overly broad and vague, unduly burdensome, and
seeks information not likely to lead to the discovery
of admissible evidence.  Without waiving its
objections, the defendant submits the following:

(a)  Captain David McDevitt:

(b)  The plaintiff was made comfortable and attended
     to while the vessel deviated to a closer port
     for transfer to an ambulance.  He did not
     receive any "medical care" while onboard the
     vessel.

(c)    The defendant is not aware of the nature,
       extent, and scope of medical treatment that the
       plaintiff received ashore.

(d)    The defendant objects to subpart (d) in that it
       fails to identify any regulation and/or
       precaution and is overly broad, unduly
       burdensome, and not likely to lead to the
       discovery of admissible evidence.  To the extent
       that the plaintiff identifies the regulation
       and/or precaution and limits the scope of
       subpart (d), the defendant will respond
       accordingly.

(e)    The defendant objects to subpart (e) in that it
       seeks information obtained in anticipation of
       litigation and protected by the attorney work-
       product and attorney-client privileges.

### SUPPLEMENTAL RESPONSE NO. 10

(e)    **Without waiving its objection, the defendant
       does not recall each and every crewmember's
       involvement with the plaintiff during the time
       the vessel deviated to a closer port for
       transfer to an ambulance.**

INTERROGATORY NO. 12

Please describe all passenger slip and fall accidents
*of any kind* that occurred during any M/V VOYAGER III
operation during the two years prior to the incident
and since the incident regardless of whether the
injury gave rise to a lawsuit.  Please be sure to
include the following in your answer:

(a)    The identity of the injured person(s);

(b)    The identity of those witnessing such injuries,
       and;

(c)    The identity of those who have knowledge of such
       injuries.

4

## RESPONSE NO. 12(a-c)

The defendant objects to Interrogatory No. 12 in that it seeks information not likely to lead to the discovery of admissible evidence.  To the extent that the plaintiff limits the scope of Interrogatory No. 12 to incidents that occurred in the same area onboard the vessel, during similar weather conditions, and under similar navigating conditions as alleged in this claim by the plaintiff, the defendant will respond accordingly, otherwise it relies on its objection.

### SUPPLEMENTAL RESPONSE NO. 12(a-c)

**Without waiving its objection, the defendant submits it did not start to operate the vessel until the beginning of the 2003 whale watching season.  The defendant is not aware of any personal injuries that occurred on the vessel's forepeak or pulpits from the time it started to operate the vessel until the date of the incident.**

## INTERROGATORY NO. 13

For a period of five years prior to the date of the incident, please identify each of the defendants' employees who were in charge of organizing, planning or supervising safety aboard the M/V VOYAGER III by setting forth, in addition to the definition above, the following:

(a)  A full and complete description of each identified person's duties; and

(b)  The period for which each was employed.

## RESPONSE NO. 13(a&b)

The defendant objects to Interrogatory No. 13 in that it is overly broad and vague, unduly burdensome, and seeks information not likely to lead to the discovery of admissible evidence. Without waiving its objection, the defendant submits that all of the Captains that have served onboard the vessel were responsible for safety.  The defendant further submits that William Walker and Michael McGurl were

5

responsible for overseeing the safe operation and management of the vessel at the time of the incident.

## SUPPLEMENTAL RESPONSE NO. 13(a&b)

**The defendant did not start operating the vessel until the beginning of the 2003 whale watching season. The Captains that served onboard the vessel from that time through the date of the incident, not including Dale Sullivan-Taylor and David McDevitt, are as follows: William Lyons, 24 Stafford Road, Hull, Massachusetts; Bryan Burton, 5 Holden Court, Boston, Massachusetts; Craig Bradford, 11 Tower Street, Jamaica Plain, Massachusetts, and; Earl Fagan, 22 Stoughton Street, Randolph, Massachusetts.**

INTERROGATORY NO. 15

Regarding the bow areas of the M/V VOYAGER III please state the following:

(a)    The composition of the deck in the area where the incident occurred including in your answer whether the deck was painted with paint and/or non-skid and the most recent date prior to the incident when the deck had last been painted and/or had non-skid applied;

(b)    The point during a cruise, if ever, that the bow areas are made off-limits to passengers due to rough weather and the identity of the person who makes that decision;

(c)    The M/V VOYAGER III's policy regarding when, and under what wind and sea conditions the bow area should be made off limits; and

(d)    a description of the steps taken by the crew of the M/V VOYAGER III to ensure that the M/V VOYAGER III's passengers would not ride on either bow during rough weather.

RESPONSE NO. 15(a-d)

(a)    The fore deck in the area of the incident is constructed of aluminum and is coated with non-

6

skid material, which is applied annually or as is necessary;

(b)   The vessel's pulpits are closed to passengers during transit.  The Captain will determine whether to open those areas to the passengers upon the observation of whales.

(c)   The vessel's pulpits are closed to passengers during transit.  *See, (b) above.*

(d)   The vessel's pulpits are closed to passengers during transit.  *See, (b) above.*

### SUPPLMENTAL RESPONSE NO. 15

(a)   **Non-skid was applied to the vessel's decks and pulpits in the Spring of 2004.**

INTERROGATORY NO. 17

Please state whether the defendants' agents, servants, or employees investigated the incident and/or inspected the area where the incident occurred.  In your answer, kindly including the following:

(a)   The identity of the person(s) who performed any such investigation;

(b)   The identity of the person(s) who performed any such inspection;

(c)   A detailed description of each such investigation and inspection including the results of each; and

(d)   The identity of any written records of all such investigations and inspections.

RESPONSE NO. 17

(a)   Thomas J. Muzyka and Kenneth M. Chiarello, Clinton and Muzyka, P.C., One Washington Mall, Boston, MA  02108 and Brian Morrissey, Marine Safety Consultants, Inc., 26 Water Street, Fairhaven, Massachusetts;

(b)   Brian Morrissey, Marine Safety Consultants,
      Inc., 26 Water Street, Fairhaven, Massachusetts;

(c)   The defendant objects to subpart (c) in that it
      seeks information protected by the attorney
      work-product and attorney-client privileges, and
      information obtained in anticipation of
      litigation.

(d)   The defendant objects to subpart (d) in that it
      seeks information protected by the attorney
      work-product and attorney-client privileges, and
      information obtained in anticipation of
      litigation.

### SUPPLEMENTAL RESPONSE NO. 17

(d)   **Without waiving its objection, correspondences
      from Marine Safety Consultants, Inc. dated June
      21, 2006, February 7, 2005, October 3, 2005, and
      May 1, 2006, all of which are addressed to
      defense counsel and are privileged.  Defense
      counsel also has within its possession several
      photographs obtained by Marine Safety
      Consultants, Inc. on July 22, 2004.**

## INTERROGATORY NO 19

Please describe the steps taken by the M/V VOYAGER
III's owner, captain, officers and/or shoreside
managers, if any, to conduct a Job Hazard Analysis
and/or risk assessment for passenger safety during
rough weather.

## RESPONSE NO. 19

The defendant objects to the portion of Interrogatory
No. 19 seeking information regarding Job Hazard
Analysis as it requests information not likely to
lead to the discovery of admissible evidence and is
protected by the self-critical analysis privilege.
The plaintiff was a passenger not an employee at the
time of the incident.  Additionally, the defendant
submits that the Captains that serve onboard the
vessel are U.S. Coast Guard licensed.

SUPPLEMENTAL RESPONSE NO. 19

During a whale watch excursion, the defendant is continuously assessing any risks to passengers by routinely inspecting the passenger areas and providing the appropriate instructions under the existing circumstances, and; by evaluating the forecasted and actual weather and sea conditions, and responding appropriately under the circumstances. The defendant reserves the right to supplement this response as discovery progresses.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ____ DAY OF SEPTEMBER, 2006.

WATER TRANSPORTATION ALTERNATIVES, INC.

By: William L. Walker
Its: Principal

OBJECTIONS BY:

Thomas J. Muzyka
BBO NO. 365540
Kenneth M. Chiarello
BBO NO. 639274
CLINTON & MUZYKA, P.C
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

# Exhibit 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM STEFANIAK and                    CIVIL ACTION
JANICE STEFANIAK,                        NO: 05-11465-MLW
     Plaintiffs,

vs.

VOYAGER III, LLC., WATER
TRANSPORTATION ALTERNATIVES, INC.,
NEW ENGLAND AQUARIUM CORPORATION, and
NEW ENGLAND AQUARIUM MARINE LIFE
CENTER, INC.,
     Defendants.

### DEFENDANT, WATER TRANSPORTATION ALTERNATIVES, INC.'S, RESPONSE TO PLAINTIFF, WILLIAM STEFANIAK'S, REQUEST FOR PRODUCTION OF DOCUMENTS

Now comes the defendant, Water Transportation Alternatives, Inc., in the above-entitled action, by and through its undersigned attorneys, and hereby submits its Response to Plaintiff, William Stefaniak's, Request for Production of Documents.

### GENERAL OBJECTION

The defendant objects to all of the plaintiff's Requests insofar as they seek discovery of matters which constitutes privileged communications or materials prepared in anticipation of litigation or trial. By furnishing a response to any request, the defendant does not waive any of its general or specific objections to that or any other Request.

REQUEST NO. 1

All documentation supportive of your claim to be a
charitable organization including but not limited to
proofs supportive of any tax-exempt status you may
have under IRC § 501(c)(3) and/or based upon M.G.L.
Ch. 231, § 85K.

RESPONSE NO. 1

Not applicable.

REQUEST NO. 2

All Coast Guard documentation related to the M/V
VOYAGER III including but not limited to the
Certificate of Documentation and the Certificate of
Inspection.

RESPONSE NO. 2

The defendant objects to Request No. 2 in that it is
overly broad and vague, and seeks documents not
likely to lead to the discovery of admissible
evidence.  Without waiving its objection, the
defendant refers the plaintiff to the U.S. Coast
Guard "Report of Investigation Into the Circumstances
Surrounding the Incident Involving M/V VOYAGER II –
Passenger Injury on 07/14/04" and U.S. Coast Guard
Form 2692, both of which are attached hereto as
Exhibit "A."

REQUEST NO. 3

The nautical chart used at the time of the incident.

RESPONSE NO. 3

To the extent that the defendant still has the chart
in its possession, it will be made available to the
plaintiff during the vessel's onboard inspection.

REQUEST NO. 4

The M/V VOYAGER III's logbook for the day of the
incident and the month preceding the incident.

RESPONSE NO. 4

   Please see a copy of the vessel's Deck Log for the
   date of the incident attached hereto as Exhibit
   "B."

REQUEST NO. 5

   All logs – both personal and official logs – created
   by the M/V VOYAGER III's operator(s) that mention,
   record, or otherwise note the time and details of the
   incident.

RESPONSE NO. 5

   Please see a copy of the vessel's Deck Log for the
   date of the incident attached hereto as Exhibit
   "B."

REQUEST NO. 6

   All M/V VOYAGER III safety policy statements and/or
   safety credo statements.

RESPONSE NO. 6

   The defendant objects to Request No. 6 in that it is
   overly broad and vague, unduly burdensome, and seeks
   documents not likely to lead to the discovery of
   admissible evidence.

REQUEST NO. 7

   All M/V VOYAGER III safety manuals and safety
   training manuals.

RESPONSE NO. 7

   The defendant objects to Request No. 6 in that it is
   overly broad and vague, unduly burdensome, and seeks
   documents not likely to lead to the discovery of
   admissible evidence.  Without waiving its objections,
   please see the Employee Policy Book, Operations
   Manual, and Security Plan attached hereto as Exhibit
   "C."

REQUEST NO. 8

        All M/V VOYAGER III memorandums, internal reports,
        emails, notes, personal logs, ship's logs, letters
        and written documents of any kind that describe any
        aspect of the incident including but not limited to
        any mention of the weather and/or sea state
        conditions at the time of the incident.

RESPONSE NO. 8

        Please see the Passenger Accident Report attached
        hereto as Exhibit "D."

REQUEST NO. 9

        All operation and safety policies for the M/V VOYAGER
        III including but not limited to those operation and
        safety policies addressing the following areas:

        (a)   Trip cancellation procedures during rough
              weather;

        (b)   Securing forward weather decks during rough
              weather;

        (c)   Boat-handling policies and procedures during
              rough weather;

        (d)   Risk assessment and/or accident reporting
              procedures; and

        (e)   Post-accident investigation and safety audit
              policies.

RESPONSE NO. 9

        The defendant objects to Request No. 6 in that it is
        overly broad and vague, unduly burdensome, and seeks
        documents not likely to lead to the discovery of
        admissible evidence.  Without waiving its objections,
        please see the Employee Policy Book, Operations
        Manual, and Security Plan attached hereto as Exhibit
        "C."

REQUEST NO. 10

    All written materials – including but not limited to
pamphlets, books, booklets, memos, letters,
newsletters, posters, signs or notices – videos,
photographs or diagrams regarding the procedures that
were in place to prevent accidents and injuries
including but not limited to the M/V VOYAGER III's
policies on boat handling and passenger management
during rough weather.

RESPONSE NO. 10

    The defendant objects to Request No. 6 in that it is
overly broad and vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.  Without waiving its objections,
please see the Employee Policy Book, Operations
Manual, and Security Plan attached hereto as Exhibit
"C."

REQUEST NO. 11

    All written materials – including but not limited to
pamphlets, books, booklets, memos, letters
newsletters, posters, signs or notices – videos,
photographs or diagrams regarding any internal M/V
VOYAGER III instructions, guidelines and/or warnings
on navigation hazards and boat-handling techniques
for the general geographical area of the incident.

RESPONSE NO. 11

    The defendant objects to Request No. 6 in that it is
overly broad and vague, unduly burdensome, and seeks
documents not likely to lead to the discovery of
admissible evidence.  Without waiving its objections,
please see the Employee Policy Book, Operations
Manual, and Security Plan attached hereto as Exhibit
"C."

REQUEST NO. 12

    All minutes to each M/V VOYAGER III management
meeting and each onboard safety meeting to date that
have discussed rough water operation and passenger
safety.

RESPONSE NO. 12

    None.

REQUEST NO. 13

    All written reports, document or records produced in conjunction with any U.S. Coast Guard safety inspection or investigation of the M/V VOYAGER III that took place within one year before and one year after the accident.

RESPONSE NO. 13

    None.

REQUEST NO. 14

    All M/V VOYAGER III written information or policies that describe the title, duty, role and responsibility of each individual working aboard the M/V VOYAGER III at the time of the incident.

RESPONSE NO. 14

    The defendant objects to Request No. 6 in that it is overly broad and vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.  Without waiving its objections, please see the Employee Policy Book, Operations Manual, and Security Plan attached hereto as Exhibit "C."

REQUEST NO. 15

    All merchant mariner's licenses and certificates for all M/V VOYAGER III officers and crewmembers aboard the M/V VOYAGER III at the time of the incident.

RESPONSE NO. 15

    Please see copies of the crewmember's employment files attached hereto as Exhibit "E."

REQUEST NO. 16

    All logbooks, timesheets and/or overtime records that document the M/V VOYAGER III captain's work and rest periods for the day of the incident and for the month preceding the incident.

RESPONSE NO. 16

    The defendant objects to Request No. 17 in that it requests information not likely to lead to the discovery of admissible evidence.  In his Answers to Interrogatories, the plaintiff does not allege any theory of liability based upon fatigue factors.

REQUEST NO. 17

    All written materials – including but not limited to pamphlets, books, booklets, memos, letters, newsletters or notices – videos, photographs or diagrams regarding M/V VOYAGER III work hour policies, including policies and procedures for avoiding operator fatigue and overwork.

RESPONSE NO. 17

    The defendant objects to Request No. 17 in that it requests information not likely to lead to the discovery of admissible evidence.  In his Answers to Interrogatories, the plaintiff does not allege any theory of liability based upon fatigue factors.

REQUEST NO. 18

    All written procedures in place at the time of the incident that attempted to insure that the crew of the M/V VOYAGER III was trained and/or supervised in compliance with all relevant rules and guidelines involving safe passenger vessel operation, regardless of the source of those rules and guidelines.

RESPONSE NO. 18

    The defendant objects to Request No. 6 in that it is overly broad and vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.  Without waiving its objections,

please see the Employee Policy Book, Operations
Manual, and Security Plan attached hereto as Exhibit
"C" and the crewmembers' employment files attached
hereto as Exhibit "E."

REQUEST NO. 19

All logs, records or transcripts of verbal
communications between the M/V VOYAGER III and the
M/V VOYAGER III's Shoreside management that mention,
record or otherwise note the details of the incident.

RESPONSE NO. 19

None.

REQUEST NO. 20

A complete copy of all insurance policies related to
this defendant that were in effect on the date of the
incident.

RESPONSE NO. 20

The defendant is in the process of obtaining a copy
of the policy affording coverage and will produce it
upon receipt.

REQUEST NO. 21

A complete copy of all contracts in effect at the
time of the incident that existed between this
defendant and any other entity related to the M/V
VOYAGER III and/or the M/V VOYAGER's whale watch
activities.

RESPONSE NO. 21

The defendant is in the process of obtaining the
Charter Party with Water Transportation Alternatives,
Inc. and will produce same upon receipt. The
defendant also refers the plaintiff to the Operating
Agreement attached hereto as Exhibit "F."

REQUEST NO. 22

    All statements or memoranda statements that were made by the plaintiffs concerning the incident.

RESPONSE NO. 22

    None.

REQUEST NO. 23

    All statements or memoranda of statements that were made by persons who witnessed the incident.

RESPONSE NO. 23

    The defendant objects to Request No. 23 in that it seeks documents obtained in anticipation of litigation, and protected by the attorney work-product and attorney-client privileges.

REQUEST NO. 24

    All statements or memoranda of statements that were made by persons having knowledge of the facts and/or circumstances concerning the incident.

RESPONSE NO. 24

    The defendant objects to Request No. 24 in that it seeks documents obtained in anticipation of litigation, and protected by the attorney work-product and attorney-client privileges.

REQUEST NO. 25

    All accident reports, investigation reports, Master's reports and all reports submitted to the Coast Guard that refer to or describe the incident including but not limited to Form CG-2692 (Report of Marine Accident, Injury or Death).

RESPONSE NO. 25

    Please see the documents attached hereto as Exhibit "A."

REQUEST NO. 26

    All documentation depicting and/or describing the course taken by the M/V VOYAGER III on the following whale watching voyages:

    (a)   The voyage immediately preceding the voyage on which the incident occurred;

    (b)   The voyage upon which the incident occurred, and;

    (c)   The voyage immediately following the voyage upon which the incident occurred.

RESPONSE NO. 26

    Please see a copy of the Vessel's Deck log attached hereto as Exhibit "B."

REQUEST NO. 27

    A copy of the results of any drug screening conducted on the captain or crew as a result of the incident.

RESPONSE NO. 27

    The defendant objects to Request No. 27 in that it requests information protected by the HIPPA regulations.  Without waiving its objection, the defendant does not have any response documents.

REQUEST NO. 28

    All documentation that lists the master and crew employed upon the vessel on the day of the incident.

RESPONSE NO. 28

    Please see a copy of the vessel's Deck Log attached hereto as Exhibit "B."

REQUEST NO. 29

    For a period of three years prior to the incident and up to the present, all correspondence between the defendant and each of the following:

    (a)   the Boston Harbor Master's office, and;

    (b)   the U.S. Coast Guard.

RESPONSE NO. 29

The defendant objects to Request No. 29 in that it is overly broad and vague, unduly burdensome, and seeks documents not likely to lead to the discovery of admissible evidence.  Without waiving its objection, the defendant refers the plaintiff to the U.S. Coast Guard Form 2692 that it submitted to the U.S. Coast Guard in connection with the incident, which is attached hereto as Exhibit "A."

REQUEST NO. 30

All documentation regarding the most recent marine survey done prior to the date of the incident.

RESPONSE NO. 30

Please see the Condition & Value Survey Report prepared by Marine Safety Consultants, Inc. on April 18, 2003, which is attached hereto as Exhibit "G."

REQUEST NO. 31

Regarding business records that pertain to the voyage which the incident occurred please provide a copy of the ticket, a copy of all literature that was given or available to the passengers, the passenger list, all passenger releases and/or agreements and all ticket-related sales receipts.

RESPONSE NO. 31

The defendant objects to Request No. 31 in that it seeks documents not likely to lead to the discovery of admissible evidence.  Without waiving its objection, the defendant refers the plaintiff to the brochure and ticket attached hereto as Exhibit "H."

REQUEST NO. 32

All documents referring to, describing, evidencing or constituting post-accident investigations of the incident.

RESPONSE NO. 32

The defendant objects to Request No. 23 in that it seeks documents obtained in anticipation of litigation, and protected by the attorney work-product and attorney-client privileges.  Without waiving its objection, the defendant refers the plaintiff to the Passenger Accident Report attached hereto as Exhibit "D."

REQUEST NO. 33

All blueprints, plans, chalks, drawings, diagrams, maps and visual reproductions pertaining to the M,/V VOYAGER III.

RESPONSE NO. 33

The defendant objects to Request No. 33 in that it is overly broad and vague, and seeks documents not likely to lead to the discovery of admissible evidence.  To the extent the plaintiff limits the scope of Request No. 33 and identifies the specific drawings requested, the defendant will respond accordingly.

REQUEST NO. 34

All correspondence between the vessel owner, its agents, servants, employees, or members of the crew and emergency responders and/or medical facilities ashore.

RESPONSE NO. 34

None.

REQUEST NO. 35

All employee handbooks, flyers, notices and memorandums issued to the master or crew for a period of three years prior to the incident that discuss:

    (a)  Safety practices and procedures aboard the M/V VOYAGER III;

    (b)  Safety responsibilities of the master and crew;

    (c)  Job duties of the master and crew; and/or

    (d)  Passenger access aboard the M/V VOYAGER III.

RESPONSE NO. 35

Please see the documents attached hereto as Exhibit "C."

REQUEST NO. 36

All advertising related to the M/V VOYAGER III and/or the whale watch activities of the M/V VOYAGER III including but not limited to print ads, flyers, fax blasts, electronic mailings, brochures, television ads, direct mailings and radio ads.

RESPONSE NO. 36

Please see the brochure attached hereto as Exhibit "H."

REQUEST NO. 37

All reports, memoranda, logs, notices, letters, diary entries, notes, journal entries and any other correspondence or document related to injuries occurring aboard the M/V VOYAGER III for a period of five years prior to the date of the incident and up to the present.

RESPONSE NO. 37

The defendant objects to Request No. 37 in that it is overly broad and vague, seeks documents not likely to lead to the discovery of admissible evidence, and

documents obtained in anticipation of litigation and
protected by the attorney work-product and attorney-
client privileges.

REQUEST NO. 38

All recorded imagery including but not limited to
photographic reproductions, videos, slides and
microfiche related to and/or depicting the plaintiff,
William Stefaniak, and/or the general are of the
incident.

RESPONSE NO. 38

The defendant objects to Request No. 38 in that it
seeks photographs obtained in anticipation of
litigation and protected by the attorney work-product
doctrine.  Without waiving its objections, the
defendant does not have any photographs or videotapes
of the plaintiff.

REQUEST NO. 39

All OSHA and U.S. Coast Guard citations, violation
notices, or notices imposition of fine that the
defendants have received for a period of five years
prior to the date of the incident and up to the
present.

RESPONSE NO. 39

None.

REQUEST NO. 40

The report, fee schedule, list of published work,
history of testimony and Curriculum Vitae of each
expert whom you anticipate calling as a witness at
the trial of this action.

RESPONSE NO. 40

The defendant has not made a determination concerning
the experts it intends to call at trial.  The
defendant will supplement this response and produce
the documents it is required to disclose pursuant to

the Federal Rules of Civil Procedure and Local Rules
at the conclusion of discovery.

REQUEST NO. 41

All documents produced in respond to any keeper of
records depositions noticed by the defendant.

RESPONSE NO. 41

Not applicable.

REQUEST NO. 42

All employment record related to the captain and crew
that were aboard the M/V VOYAGER III on the date of
the incident including but not limited to resumes,
Curriculum vitae, applications, drug screens,
background checks and evaluations.

RESPONSE NO. 42

Please see the documents attached hereto as Exhibit
"E."

By its attorneys,

CLINTON & MUZYKA, P.C.

Thomas J. Muzyka
BBO NO: 365540
Kenneth M. Chiarello
BBO NO:  639274
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above
document was served upon the attorney of record
for each party by: hand, mail, overnight mail,
facsimile, on

# Exhibit 7

Report of Investigation

# I. INCIDENT BRIEF

On 7/14/04, a passenger aboard the M/V VOYAGER III slipped on the deck and injured his buttocks and back.

The M/V VOYAGER III departed Boston Harbor for a Whale Watching trip. The seas were approximately 2 feet in the harbor. As the vessel exited the harbor, the seas rose to 2 to 3 feet. A safety announcement was conducted prior to the departure warning passengers of the sea conditions. At approximately 1010, a crewmember observed passenger walking forward toward the bow on the port side. Shortly after, the M/V VOYAGER III encountered a swell approximately 4 feet. The passenger slipped backwards injuring his lower backside and back. The crew assisted the passenger as the master maneuvered the vessel and transited the vessel to Hull, Ma. Local paramedics were on scene when the vessel moored and administered first aid. The passenger was then transported to local hospital by ambulance for observation.

# II. EXECUTIVE SUMMARY

**Incident Summary**

On 7/14/04, a passenger aboard the M/V VOYAGER III slipped on the deck and injured his buttocks and back.

The M/V VOYAGER III departed Boston Harbor for a Whale Watching trip. The seas were approximately 2 feet in the harbor. As the vessel exited the harbor, the seas rose to 2 to 3 feet. A safety announcement was conducted prior to the departure warning passengers of the sea conditions. At approximately 1010, a crewmember observed passenger walking forward toward the bow on the port side. Shortly after, the M/V VOYAGER III encountered a swell approximately 4 feet. The passenger slipped backwards injuring his lower backside and back. The crew assisted the passenger as the master maneuvered the vessel and transited the vessel to Hull, Ma. Local paramedics were on scene when the vessel moored and administered first aid. The passenger was then transported to local hospital by ambulance for observation.

Incident Involved:     Marine Casualty, Reportable

Level of Investigation: Data Collection
IMO Classification: Routine
USCG Classification: Routine
Was this a Serious Marine Incident? Yes
Was a Marine Board Convened by Commandant? No

**Personnel Casualty Summary**

Total Missing = 0
Total Dead = 0

# Exhibit 8

# HARBOR EXPRESS
## SHIFT LOG

DAY/DATE: Wed July 14, 2004  WEATHER: _____

VESSEL: Voyager   AM/PM:   SEA CONDITIONS: _____

| ARRIVE | | DEPART | OFF | ON | R/T | TOTALS |
|--------|--------|--------|-----|-----|-----|--------|
| | Going | 0640 | | 0 | | |
| 701 | Hull | 706 | | 75 | 75 |
| 726 | Boston | 730 | 75 | 0 | | |
| | | | | | | |
| 806 | Going | 809 | 0 | 18 | 18 | |
| 843 | Boston | | 18 | | | |
| | Rowing | 930 | | 46 | 46 | |
| 1017 | Hull | 1025 | 2 | | | |
| 1050 | Hyannis | | 48 | | | |
| | | | | | | |
| | Boston | 1730 | | 18 | | |
| | Going | | 18 | | | |

CAPTAIN: David Mohr
SENIOR CREW: Sullivan
BAR MANAGER:
CREW: J Doan
CREW: M Roche
CREW: A Patterson
CREW: J Gill
MOD: R Daushke

| PORT ENGINE HOURS: | #1 | #2 | GEN |
|--------------------|-----|-----|-----|
| START | | | |
| FINISH | | | |
| ELAPSED | | | |

| STBD. ENGINE HOURS: | #3 | #4 | GEN |
|---------------------|-----|-----|-----|
| START | | | |
| FINISH | | | |
| ELAPSED | | | |

| PORT #1 ENGINE: | OK | ADD | GAL |
|-----------------|-----|-----|-----|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | ✓ | | |
| WATER LEVEL | ✓ | | |
| START-UP TEMP. | | | |

| PORT #2 ENGINE: | OK | ADD | GAL |
|-----------------|-----|-----|-----|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | ✓ | | |
| WATER LEVEL | ✓ | | |
| START-UP TEMP. | | | |

| STBD. #3 ENGINE: | OK | ADD | GAL |
|------------------|-----|-----|-----|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | ✓ | | |
| WATER LEVEL | | | |
| START-UP TEMP. | | | |

| STBD. #4 ENGINE: | OK | ADD | GAL |
|------------------|-----|-----|-----|
| OIL LEVEL | | | 3 |
| GEAR OIL LEVEL | | | |
| WATER LEVEL | | | |
| START-UP TEMP. | | | |

| PORT JETS: | OK | ADD | QTS. |
|------------|-----|-----|------|
| INBOARD HYDRAULIC OIL | ✓ | | |
| OUTBOARD HYDRAULIC OIL | | | |

| STBD. JETS: | OK | ADD | QTS. |
|-------------|-----|-----|------|
| INBOARD HYDRAULIC OIL | | | |
| OUTBOARD HYDRAULIC OIL | ✓ | | |

| PORT GENERATOR: | OK | ADD | QTS. |
|-----------------|-----|-----|------|
| OIL LEVEL | | | |
| WATER LEVEL | | | |

STBD. GENERATOR: OK ADD QTS.

TOTAL:

| COMMENTS: | CHECK OFF: | DATE | TIME |
|-----------|------------|------|------|
| | WATER TANK FILLED | | |
| | HOLDING TANKS PUMPED | | |

| Time | Location | | | | |
|---|---|---|---|---|---|
| 843 | Boston | | 11 | | |
| | Harbor 930 | | 46 | | 46 |
| 1017 | Hull 1027 | | 2 | | |
| 1050 | Aquarium | | 46 | | |
| | Boston 1130 | | 14 | | 14 |
| | Going | | 14 | | |

**CREW:** ___

**MOD:** P. Drysdale

**PORT ENGINE HOURS**

| | #1 | #2 | GEN |
|---|---|---|---|
| START | 773 | 497 | 6381 |
| FINISH | | | |
| ELAPSED | 8 | 8 | |

**STBD. ENGINE HOURS**

| | #3 | #4 | GEN |
|---|---|---|---|
| START | 2170 | 3234 | |
| FINISH | | | |
| ELAPSED | | | |

**PORT #1 ENGINE:**

| | OK | ADD | GAL. |
|---|---|---|---|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | ✓ | | |
| WATER LEVEL | | | |
| START-UP TEMP. | | | |

**PORT #2 ENGINE:**

| | OK | ADD | GAL. |
|---|---|---|---|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | | | |
| WATER LEVEL | | | |
| START-UP TEMP. | | | |

**STBD. #3 ENGINE:**

| | OK | ADD | GAL. |
|---|---|---|---|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | ✓ | | |
| WATER LEVEL | | | |
| START-UP TEMP. | | | |

**STBD. #4 ENGINE:**

| | OK | ADD | GAL. |
|---|---|---|---|
| OIL LEVEL | | | |
| GEAR OIL LEVEL | | | |
| WATER LEVEL | | | 3 |
| START-UP TEMP. | | | |

**PORT JETS:**

| | OK | ADD | QTS. |
|---|---|---|---|
| INBOARD HYDRAULIC OIL | ✓ | | |
| OUTBOARD HYDRAULIC OIL | ✓ | | |

**STBD. JETS:**

| | OK | ADD | QTS. |
|---|---|---|---|
| INBOARD HYDRAULIC OIL | ✓ | | |
| OUTBOARD HYDRAULIC OIL | ✓ | | |

**PORT GENERATOR:**

| | OK | ADD | QTS. |
|---|---|---|---|
| OIL LEVEL | | | |
| WATER LEVEL | | | |

| TOTAL | |
|---|---|

| COMMENTS: | CHECK OFF: | DATE | TIME |
|---|---|---|---|
| | WATER TANK FILLED | | |
| | HOLDING TANKS PUMPED | | |

**STBD. GENERATOR:**

| | OK | ADD | QTS. |
|---|---|---|---|
| OIL LEVEL | | | |
| WATER LEVEL | | | |

**FUEL:**

| | PORT | STBD |
|---|---|---|
| RECEIVED | | |

**ENGINE ALARMS:**

Comments (handwritten):
hook and swell and passengers landed on deck
complaint is Deck Injured left ___
___ for Hull + take to Boston Dock to
___

Exhibit 9



# WTA
# POLICY BOOK
## (HARBOR EXPRESS)

| No | HE-11 |
| --- | --- |
| Issue | 1 |
| Date | December 11 1996 |
| Page | 4 of 6 |

ATTACHMENT C

## PASSENGER ACCIDENT REPORT

NAME OF SHIP __Voyager III__    VOY. NO. _____    REPORT DATE __7/14/04__

CAPTAIN __David McDevitt__ BOAT MANAGER _____

DATE AND TIME OF INCIDENT __7/14/04    10am__

WEATHER __Cloudy, rainy, rough seas__ LOCATION OF INCIDENT __Bow of Boat__

PASSENGER NAME ____ __William Stefaniak__

ADDRESS ____ __12 North St. Leominster, MA__

TELEPHONE ____ __(978) 342-1846__

DATE OF BIRTH __5/23/55__    SOCIAL SECURITY NO. _____

WAS PASSENGER OFFERED MEDICAL TREATMENT? ____ __Yes__

PASSENGER'S RESPONSE, ACCEPTED __X__ REFUSED _____

__Passenger was taken to South Shore Hospital
in Weymouth w/ back injury to lower left back__

DESCRIPTION OF INCIDENT __Took on a swell passenger
was on tour (port side) swell jolted
passenger to floor of boat resulting
in back injury__

WITNESS __Jeff Dunn__

ADDRESS __AG 4 Interam Ln. Wellesley, MA__

TELEPHONE NO __781-237-4081__

PERSON REPORTING INCIDENT __Melissa Rocha__

JOB TITLE __Crew__    DATE __7/14/04__

# Exhibit 10

# Want to see where
# the really big anima



**W**elcome aboard the Voyager III! Enjoy the view as this high-speed catamaran whisks you safely to the whale feeding grounds just 30 miles east of Boston, where you'll glimpse the largest animals to ever live on Earth. Our destination is Stellwagen Bank, a busy feeding area for whales, dolphins, sea birds and other marine life. Interact with our naturalists to learn how they collect information on whales. Experience the hands-on navigation station. View the captain in action on the bridge.

**Guaranteed Whale Sightings!**

On this fun family voyage, *whale sightings are guaranteed!* In the rare event we do not see any whales, passengers will receive a complimentary New England Aquarium Whale Watch ticket. New England Aquarium is one of the leading marine conservation organizations in the world — let us show you what experience offers!

# Exhibit 11



# United States Coast Guard
## Maritime Information eXchange
## Port State Information eXchange



CGMIX Home
PSIX Home
Vessel Search
VSP Status
FSP Status
Contact Us
Links
FAQ/Help
Version 2.3

Printer Friendly Version

## Vessel Results for Vessel:  VOYAGER III

### Vessel Information

| Vessel | VIN | Hull Number | Flag | Call-Sign | Year Built |
|---|---|---|---|---|---|
| VOYAGER III | 1077034 | | UNITED STATES | WCY9932 | 1999 |

### Vessel Particulars

| Service | Length | Breadth | Depth | Alternate VINs | IMO Number |
|---|---|---|---|---|---|
| Passenger (Inspected) | 95.1 ft | 30.3 ft | 9.7 ft | 1077034 | N/A |

### Service Information

| Service Status | Out of Service Date | Last Removed from Service by |
|---|---|---|
| In Service | N/A | N/A |

### Tonnage Information

| Deadweight | Gross Tonnage(GRT) | Net Tonnage(NRT) | Gross Tonnage(GT ITC) |
|---|---|---|---|
| | 91.0 | 62.0 | 218.0 |

### Cargo Authority

### Vessel Documents and Certifications

| Document | Agency | Date Issued | Expiration Date |
|---|---|---|---|
| Stability Letter | USCG | June 3, 1999 | |

| | | | |
|---|---|---|---|
| Certificate of Inspection - Amended | USCG | June 4, 2002 | June 4, 1999 |
| Certificate of Inspection | USCG | April 25, 2007 | April 25, 2002 |
| Certificate of Inspection - Amended | USCG | April 25, 2007 | April 25, 2002 |
| Certificate of Inspection - Amended | USCG | April 25, 2007 | April 25, 2002 |
| Certificate of Inspection | USCG | April 25, 2007 | April 25, 2002 |
| CERTIFICATE OF DOCUMENTATION | USCG | January 31, 2007 | December 13, 2005 |

## Summary of Coast Guard Contacts

View Data From(MM/DD/YYYY): 9/22/2001                 To: 9/22/2006                 Submit

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2638400 | Boston, MA | May 2, 2006 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2362041 | Boston, MA | May 20, 2005 | Vessel Inspection/PSC | | |

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Fuel Oil Service System | Improper/Lack of Maintenance |

**Description of Deficiency**

Repair fuel oil leak (coupling) for port fuel tank.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Fire Fighting | Fixed Gas Fire Extinguishing System | Improper/Lack of Maintenance |

**Description of Deficiency**

Provide manuel pull for fixed fire extinguisher for furnace room and indication light.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Construction/Loadline | Penetrations | Unknown |

**Description of Deficiency**

Renew deck cable penetrations in the # 3 void space starboard.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Fire Fighting | Fire Pumps | Improper/Lack of Maintenance |

**Description of Deficiency**

Renew fire pump pressure gauge in starboard pontoon engine room.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|

| | | |
|---|---|---|
| Engineering | Fuel Oil Service System | Improper/Lack of Maintenance |

**Description of Deficiency**

Insulate fuel oil supply piping bracket in tank compartment.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Fuel Oil Storage/Transfer System | Improper/Lack of Maintenance |

**Description of Deficiency**

Repair fuel leak to starboard generator supply piping.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Reduction Gearing/Clutches | Improper/Lack of Maintenance |

**Description of Deficiency**

Repair transmission lube oil heat exchanger leaks for the aft main engine in the port pontoon.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 6/15/2005 | True | 6/15/2005 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|

| 2319388 | E PROVIDENCE, RI | March 25, 2005 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2319543 | ST. PETERSBURG, FL | March 18, 2005 | Vessel Inspection/PSC | | |

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Documentation | Logs/Records | |

**Description of Deficiency**

PROVIDE CG-2692 TO OCMI TAMPA.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 3/23/2005 | True | 3/30/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Construction/Loadline | Hull | |

**Description of Deficiency**

MAKE PERMANENT REPAIR TO PORT AFT SIDESHELL.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 3/23/2005 | True | 3/30/2005 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2309645 | ST. PETERSBURG, FL | March 12, 2005 | Vessel Inspection/PSC | | |

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Construction/Loadline | Hull | |

**Description of Deficiency**

Affect permanent repairs to port bow sideshell and affected structural members in way of damage, in accordance with repair proposal, to the satisfaction of cognizant OCMI.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 3/12/2005 | True | 3/17/2005 |

**Resolution Description**

A temp repair was made until dry dock.

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Construction/Loadline | Hull | Placed in Improper Service |

**Description of Deficiency**

Prior to the completion of the next credit dry dock examination, submit plans for properly repairing PORT bow damaged area to the local attending USCG Marine Safety Office...

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 3/22/2005 | True | 3/16/2005 |

**Resolution Description**

Vsl operator, Titan Cruise Lines, submitted repair proposal to OCMI.

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Construction/Loadline | Hull | Placed in Improper Service |

**Description of Deficiency**

Prior to the completion of the next credit dry dock examination, upon receiving a

stamped approved repair proposal from the local OCMI, crop out temporary repaired PORT bow area and renew following approved plans. Follow all local OCMI repair inspection sequences.

| Due Date | Resolved | | Resolved Date |
|---|---|---|---|
| 3/22/2005 | True | | 3/18/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Documentation | Safety/Response Plans/Programs | |

**Description of Deficiency**

Provide repair proposal in writing to cognizant OCMI whre repairs to sideshell will be made.

| Due Date | Resolved | | Resolved Date |
|---|---|---|---|
| 3/12/2005 | True | | 3/16/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Documentation | Safety/Response Plans/Programs | |

**Description of Deficiency**

Provide structural plans of vessel to cognizant OCMI where repairs to vessel will be made.

| Due Date | Resolved | | Resolved Date |
|---|---|---|---|
| 3/12/2005 | True | | 3/16/2005 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2337055 | ST. PETERSBURG, | March 6, 2005 | Incident Investigation | | Marine Casualty, Reportable |

FL

## Incident Information

**Role**

Involved in a Marine Casualty

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2303622 | Washington, DC | March 4, 2005 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2282082 | ST. PETERSBURG, FL | January 27, 2005 | Vessel Inspection/PSC | | |

## Deficiency Information

| System | SubSystem | Cause |
|---|---|---|
| Lifesaving | Inflatable Buoyant Apparatus | Placed in Improper Service |

**Description of Deficiency**

Re-locate center inflatable life raft up for crew deployment as discussed.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 2/27/2005 | True | 3/10/2005 |

**Resolution Description**

Noted tag line attached to pelican hook allowing release and then launching of raft from aft deck.

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2238829 | ST. PETERSBURG, FL | November 9, 2004 | Vessel Inspection/PSC | | |

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Deck/Cargo | Holds/Tanks | Improper/Lack of Maintenance |

**Description of Deficiency**

Replace/repair gaskets on all deck hatches as discussed.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 12/10/2004 | True | 12/7/2004 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Operations/Management | Drills/Instruction | Improper/Lack of Maintenance |

**Description of Deficiency**

Update/provide emergency evacuation plan IAW 46CFR116.520.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 11/24/2004 | True | 4/29/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Operations/Management | Drills/Instruction | Improper/Lack of Maintenance |

**Description of Deficiency**

Update/provide fire control plan IAW 46CFR116.530.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 5/20/2005 | True | 5/20/2005 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Shafting/Propeller Arrangements | Improper/Lack of Maintenance |

**Description of Deficiency**

Repair #1 & #3 reverse forced rod seal.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 12/10/2004 | True | 12/7/2004 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Bilge Water Management System | Improper/Lack of Maintenance |

**Description of Deficiency**

Provide bilge high level alarms for both PORT and STBD $CO_2$ voids IAW 46CFR119.530 or, provide pictures showing that the through hull fittings have been welded shut as discussed.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 11/17/2004 | True | 12/7/2004 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2241912 | Boston, MA | October 26, 2004 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2214089 | Boston, MA | July 14, 2004 | Incident Investigation | | Marine Casualty, Reportable |

## Incident Information

**Role**

Involved in a Marine Casualty

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2102557 | BOSTON, MA | June 18, 2004 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 2044346 | BOSTON, MA | April 15, 2004 | Vessel Inspection/PSC | | |

### Deficiency Information

| System | SubSystem | Cause |
|---|---|---|
| Pollution Prevention/Response | Prevention Equipment | |

**Description of Deficiency**

Properly lock out overboard discharge valve for MSD. LEGACY COMPONENT DESC: Standard Discharge Connection

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

Locked overboard discharge valves

### Deficiency Information

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Diesel Engine (propulsion-reduction gear) | |

**Description of Deficiency**

Properly replace the lagging on the pt fwd engine, where the exhaust is taken off of the engine. LEGACY COMPONENT DESC: Piping (exhaust)

| Due Date | Resolved | Resolved Date |
|---|---|---|

| 4/30/2004 | True | 4/30/2004 |
|---|---|---|

**Resolution Description**

Replaced lagging on Pt. fwd engine.

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Communications | Radio Communications | |

**Description of Deficiency**

Prove proper operation of the MF single side band radio. LEGACY COMPONENT
DESC: Radiotelephone Transveiver (2-4 MHz)

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Fire Fighting | Fixed Fire Detection System | |

**Description of Deficiency**

Provide proof of fire detection (sensors) testing and proper operation. LEGACY
COMPONENT DESC: Heat Detectors

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

Witnessed service report, and testing of manual call points, All SAT

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Lifesaving | Lifejacket/PFD (General) | |

**Description of Deficiency**

Vessel is restricted to carrying 322 total POB, until proper number of life jackets are

onboard. LEGACY COMPONENT DESC: Condition

| Due Date | Resolved | Resolved Date |
|----------|----------|---------------|
|          | True     | 4/30/2004     |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|--------|-----------|-------|
| Fire Fighting | Means of Escape | |

**Description of Deficiency**

Properly label the main deck, where the engine room escape hatches open. LEGACY COMPONENT DESC: Escape Route Signs

| Due Date | Resolved | Resolved Date |
|----------|----------|---------------|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

Witnessed proper labels of all escape hatches.

**Deficiency Information**

| System | SubSystem | Cause |
|--------|-----------|-------|
| Electrical | Lighting (service) | |

**Description of Deficiency**

Properly replace the cracked glass cover on the light fixture, pt side aft. LEGACY COMPONENT DESC: Lighting Fixture

| Due Date | Resolved | Resolved Date |
|----------|----------|---------------|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

Replaced Cracked glass on light fixture.

**Deficiency Information**

| System | SubSystem | Cause |
|--------|-----------|-------|
| Communications | Alarms/Indicators | |

**Description of Deficiency**

Prove proper operation of main deck fire alarm pull boxes. The boxes only sound the alarm in the pilot house and not throughout the vessel. LEGACY COMPONENT DESC: Fire Alarm

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

According to alarm technician this system is designed this way, and upon further review system is all SAT.

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Lifesaving | Visual Distress Signals (General) | Unknown |

**Description of Deficiency**

Vessel is restricted to a limited coastwise route until lights are placed on all Lifejackets. LEGACY COMPONENT DESC: Quantity

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/30/2004 | True | 4/30/2004 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1996398 | Washington, DC | January 28, 2004 | Vessel Inspection/PSC | | |
| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
| 1991384 | BOSTON, MA | January 23, 2004 | Vessel Inspection/PSC | | |
| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
| 1787140 | BOSTON, MA | April 30, | Vessel | | |

| | 2003 | Inspection/PSC |
|---|---|---|

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Fuel Oil Service System | |

**Description of Deficiency**

Free up reach rod for port fuel tank and provide proper spacing from the fuel tank.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 5/7/2003 | True | 5/2/2003 |

**Resolution Description**

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Fuel Oil Storage/Transfer System | |

**Description of Deficiency**

Repipefuel return line in way of broken bracket to starboard fuel tank.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 5/7/2003 | True | 5/2/2003 |

**Resolution Description**

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1758192 | STATEN ISLAND, NY | March 17, 2003 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1746984 | STATEN ISLAND, NY | February 20, 2003 | Enforcement | | |

**Incident Information**

| Role |
|---|
| Acknowledged Pollution Source |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1739153 | STATEN ISLAND, NY | January 23, 2003 | Incident Investigation | | Discharge of Oil |

**Incident Information**

**Role**

Acknowledged Pollution Source

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1735053 | STATEN ISLAND, NY | January 20, 2003 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1683321 | BOSTON, MA | October 2, 2002 | Vessel Inspection/PSC | | |

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 1608953 | BOSTON, MA | April 25, 2002 | Vessel Inspection/PSC | | |

**Deficiency Information**

| System | SubSystem | Cause |
|---|---|---|
| Engineering | Bilge Water Management System | |

**Description of Deficiency**

Replace the strainer for the bilge suction in the starboard side jet room and replace the missing bolt for the bilge suction in the port side jet room.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/25/2002 | True | 4/25/2002 |

**Resolution Description**

Completed prior to the completion of the inspection.

## Deficiency Information

| System | SubSystem | Cause |
|---|---|---|
| Lifesaving | Lifejacket/PFD (General) | |

**Description of Deficiency**

Provide seven lifejacket lights for 5 adult and 2 children life preservers.

| Due Date | Resolved | Resolved Date |
|---|---|---|
| 4/25/2002 | True | 4/25/2002 |

**Resolution Description**

Corrected prior to the completion of the inspection.

| Case Number | USCG Zone/Port | Incident Date | Activity Type | Enforcement Description | Nature of Incident |
|---|---|---|---|---|---|
| 68767 | STATEN ISLAND, NY | October 30, 2001 | Incident Investigation | | Marine Casualty, Reportable |

**Incident Information**

**Role**

Involved in a Marine Casualty

**Incident Information**

**Role**

Involved in a Marine Casualty

Back to Top

**Last Update:**
Monday, September 18, 2006

*Page Created:* 30 August 2000
*Last Modified:* 25 August 2005

**Marine Safety Pages:**
Port State Control (Home Page)
Office of Marine Safety

*Disclaimer:* www.uscg.mil/disclaim.html
*Questions?:* Contact Us
*Phone:* *(202) 372-1296*

*Rehabilitation Act (Section 508):*
Web accessibility concerns?
USCG Policy regarding web accessibility
*Phone:* *(202) 366-4648*

# Exhibit 12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
*****************************
WILLIAM STEFANIAK and        *          CIVIL ACTION NO. 05-11465-MLW
JANICE STEFANIAK,            *
         Plaintiffs          *
                             *
v.                           *
                             *
VOYAGER III, LLC,            *
WATER TRANSPORTATION         *
ALTERNATIVES, INC.,          *
NEW ENGLAND AQUARIUM         *
CORPORATION, and             *
NEW ENGLAND AQUARIUM         *
MARINE LIFE CENTER, INC.,    *
         Defendants.         *
*****************************
```

## PLAINTIFF, WILLIAM STEFANIAK'S, REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANT, WATER TRANSPORTATION ALTERNATIVES, INC.

The documents requested herein (or true copies of them) are to be produced at the law offices of **THE KAPLAN/BOND GROUP**, 88 Black Falcon Avenue, Suite 301, Boston, Massachusetts 02210 within 30 days from the date of this request.

The defendant may comply with this request by forwarding a copy of the requested documents to plaintiffs' counsel so long as such delivery is postmarked prior to the date called for in the preceding paragraph. If the documents requested are forwarded to the plaintiffs' attorney, they should be segregated and identified by the corresponding paragraph number of the request to which they respond.

If the defendant refuses to produce any of the requested documents on the grounds of privilege, work product or otherwise, the defendant must identify each such document by identifying its author, the author's address(es), the document's date, its general subject matter, the person(s) to whom copies were furnished and the exact basis for your objection. As to any claim that information contained in the requested document is confidential and/or requires redaction, the undersigned counsel is prepared to discuss a stipulation proving adequate protection of such information.

The word "statement" includes statements which are signed or unsigned, written, oral, recorded or transcribed.

1